# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3137

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | On remand for reconsideration from |
| v. | * | the United States Supreme Court. |
| | * | |
| Aaron Derrell Walker, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 28, 2008
Filed:  January 26, 2009

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Aaron Derrell Walker entered a conditional plea of guilty to the charge of being a felon in possession of a firearm in violation 18 U.S.C. § 922(g)(1).  The district court sentenced Walker to 180 months' imprisonment, five years of supervised release, and a $100 special assessment, concluding that two previous convictions for auto theft and temporary auto theft were violent felonies and that Walker was subject to the Armed Career Criminal Act (ACCA).  See 18 U.S.C. § 924(e)(1).  On appeal, Walker argues that (1) his stop and arrest were unlawful; and (2) the ACCA sentencing enhancement does not apply to him because his previous convictions for auto theft and temporary auto theft are not violent felonies for purposes of the ACCA, and the

district court erred in refusing to consider two other felony convictions as related. On July 20, 2007, we issued an opinion affirming the district court. United States v. Walker, 494 F.3d 688 (8th Cir. 2007). In light of Begay v. United States, 128 S.Ct. 1581 (2008), the Supreme Court vacated the opinion. Walker v. United States, 128 S.Ct. 2050 (2008). On reconsideration, we reverse the district court's finding that auto theft and temporary auto theft are violent felonies and, thus, that the Armed Career Criminal Act enhancement applies to Walker. We remand for resentencing.

On November 11, 2005, Walker was driving his vehicle in Minneapolis, traveling eastbound on Lake Street near the intersection of Cedar Avenue. Officer Daniel Ungurian of the Minneapolis Police Department testified that as Walker turned left from Lake Street to Cedar Avenue, Walker swerved in front of his vehicle on Cedar Avenue, nearly striking it. Ungurian also testified that as Walker turned left, he observed some sort of altercation occurring between Walker and a female passenger. Officer Matthew Blade of the Minneapolis Police Department was traveling on Lake Street at the same time, approximately one car length behind Walker's vehicle. He testified that he observed Walker turning left on to Cedar Avenue, squealing his tires as he turned. Both officers then began to follow Walker as he traveled northbound on Cedar Avenue. Officer Blade pulled behind Walker first and ran Walker's license plate to determine if it was stolen. The search revealed that the vehicle was not stolen. Officer Ungurian testified that as he approached Walker's vehicle, he continued to observe movement in the vehicle, indicating a fight. Ungurian decided to activate his lights and siren in order to pull Walker's vehicle over. Walker, however, did not immediately pull over, but instead drove for several more blocks and made two additional turns.

After Walker stopped, Ungurian pulled up, immediately stepped out of his squad car, and approached Walker's vehicle. As Ungurian neared the vehicle, the driver's side door opened and Walker placed his hands outside of the car. Ungurian pulled Walker out of the vehicle and immediately handcuffed him. Blade testified that

he stopped his vehicle soon after Ungurian pulled Walker over. Blade observed that the female passenger was "moving around in the front seat" and that it appeared as though "she was trying to put something on the floor by her feet." Blade then approached the passenger and opened the passenger door in an effort to see her hands. After opening the passenger door, Blade immediately noticed a rifle lying between the passenger's legs, partially obscured by a gray sweatshirt. Blade removed the passenger from the vehicle and handcuffed her. On November 14, 2005, investigators interviewed Walker. After being read his Miranda[1] rights, Walker agreed to speak with the investigators, stating that he "got real close to the police car" and that he made a "bad decision in his turn."

Walker was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Walker filed two motions to suppress, challenging the stop of his vehicle, his subsequent arrest, and statements made to investigators following his arrest. A magistrate judge recommended the denial of the motion, concluding that "Officer Ungurian had specific and articulable facts, taken together with rational inferences, to detain Walker and determine if there was criminal activity underway." The district court adopted the report and recommendation of the magistrate judge following a de novo review.[2] Walker now brings the present appeal.

I.

When reviewing a district court's denial of a motion to suppress, we examine the findings of fact for clear error and review de novo whether the investigatory stop and search violated the Fourth Amendment. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Morgan, 270 F.3d 625, 630 (8th Cir. 2001).

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

[2]Hereinafter the magistrate judge's findings of fact and conclusions of law will be attributed to the district court.

Walker contests the legality of the investigatory stop and subsequent search. He argues that the police officers did not have reasonable suspicion to stop the vehicle. For an officer to perform an investigatory stop of a vehicle, there must be reasonable suspicion. Terry v. Ohio, 392 U.S. 1, 30 (1968); see also United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007) (applying the Terry standard of reasonable suspicion to an investigatory traffic stop). Under the Terry standard, law enforcement officers are permitted to detain an individual for a brief period of time if they have a reasonable suspicion that criminal activity is afoot. See 392 U.S. at 30. In order for such a stop to be constitutional under the Fourth Amendment, the officer must be aware of "particularized, objective facts, which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Halls, 40 F.3d 275, 276 (8th Cir. 1994) (quotation marks omitted). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004).

The district court cited the following facts in concluding that Officer Ungurian possessed a reasonable suspicion to stop the vehicle: (1) Walker swerved towards Officer Ungurian's squad car as he turned left onto Cedar Avenue; (2) Officer Ungurian observed a possible altercation between Walker and another passenger; and (3) Walker failed to pull over immediately after Ungurian activated his lights. In its factual conclusions, the district court relied on the testimony of officers Ungurian and Blade and the videotape of the stop recorded by Officer Ungurian and submitted into evidence.

Walker offers two arguments as to why these circumstances do not support a determination that Officer Ungurian possessed reasonable suspicion to perform an investigatory stop of Walker's vehicle. First, Walker argues that because Officer Ungurian did not testify that Walker's erratic driving constituted a traffic violation, the driving could not support a reasonable suspicion of criminal activity. Walker is correct that any traffic violation provides probable cause for a traffic stop. See United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007). However, that does not require the conclusion that for driving behavior to support a reasonable suspicion of criminal activity, it must necessarily violate some traffic law. We have held before that police properly relied on unusual, but not illegal, driving behavior in determining that an investigatory stop was warranted. See United States v. Wright, 565 F.2d 486, 489 (8th Cir. 1977) (holding that it was permissible for the police in performing an investigatory stop to take into account, together with other suspicious circumstances, that defendants' "forward-backward driving activity was not necessary to move from the curb into the road"). In this case, considering the totality of the circumstances, Walker's erratic driving supported Officer Ungurian's suspicion that criminal activity was occurring. Officer Ungurian observed an altercation and what was possibly a criminal assault. Walker's driving therefore confirmed for Ungurian the seriousness of the altercation and the potential threat not only to the occupants in the vehicle but to the other vehicles on the road. The district court was correct that Walker's erratic driving supported a reasonable suspicion of criminal activity.

Second, Walker contests the district court's factual determinations that (1) Walker engaged in unusual driving; (2) he and his passenger were involved in an altercation; and (3) Walker failed to pull over immediately. Reviewing the evidence, we are unable to conclude that the district court committed clear error in its factual findings. Walker argues that the district court erred in finding that Walker engaged in erratic driving because Officer Blade testified that he did not see anything unusual about Walker's turn on to Cedar Avenue. Walker also argues that the videotape belies Officer Ungurian's testimony regarding an altercation in Walker's car. These

arguments are not persuasive. Officer Blade did not provide contradictory testimony, but instead testified that he did not witness the erratic driving. This was nothing more than a failure to corroborate Officer Ungurian's testimony. Similarly, while the videotape shows significant movement in the car by both Walker and the passenger, it neither demonstrates conclusively that there was an altercation occurring at the time nor contradicts Officer Ungurian's testimony. Despite the lack of corroboration for Officer Ungurian's testimony, the district court decided to credit his testimony. Such credibility determinations by district courts are "virtually unreviewable on appeal," United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995), and we therefore see no basis for disputing Officer Ungurian's account of the events. Finally, contrary to Walker's argument otherwise, the videotape demonstrates that Walker had several opportunities to pull over, but chose not to. In conclusion, the district court was not clearly erroneous in its factual findings and there was reasonable suspicion for Officer Ungurian's investigatory stop.[3]

Walker also argues that Officers Ungurian and Blade exceeded the scope of an investigatory stop by removing Walker and his passenger from the vehicle and immediately handcuffing them. During a Terry stop, officers are permitted to check for weapons and to take any additional steps "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." United States v. Hensley, 469 U.S. 221, 235 (1985). Protective searches allow for the use of handcuffs. See United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992). The removal of Walker and the passenger from the vehicle and the use of handcuffs by the police were part of a protective search and the district court committed no error in denying Walker's motions to suppress.

---

[3]Having determined that there was reasonable suspicion of criminal activity, we have no need to review the district court's determination that the community caretaking doctrine was an alternative basis for the stop.

## II.

Walker received a mandatory minimum sentence of 180 months under the Armed Career Criminal Act (ACCA), which applies if a defendant is convicted of violating 18 U.S.C. § 922, unlawful possession of a firearm, with three qualifying predicate offenses. 18 U.S.C. § 924(e). We review de novo whether an offense is a violent felony under the ACCA. United States v. Comstock, 531 F.3d 667, 679 (8th Cir. 2008). "[W]e are bound by cases interpreting whether an offense is a crime of violence under the [United States Sentencing] Guidelines as well as cases interpreting whether an offense is a violent felony under the [ACCA]." United States v. Williams, 537 F.3d 969, 971 (8th Cir.), reh'g en banc denied, 546 F.3d 961 (8th Cir. 2008).

Walker pled guilty to auto theft under Minn. Stat. 609.52, subd. 2(17), which defines the offense as "tak[ing] or driv[ing] a motor vehicle without the consent of the owner or an authorized agent of the owner, knowing or having reason to know that the owner or an authorized agent of the owner did not give consent." Walker also pled guilty to temporary auto theft under Minn. Stat. 609.52, subd. 2(5)(i), which encompasses the same conduct, but requires "the intent to exercise *temporary control only . . .*" (emphasis added).

In United States v. Aleman, 548 F.3d 1158, 1168 (8th Cir. 2008), we held that Minnesota's auto theft statute is not a crime of violence under the Guidelines, so we are constrained to hold that it is not a violent felony under the ACCA. We also hold that a conviction under Minnesota's temporary auto theft statute is not a violent felony under the ACCA, because it involves the same offense conduct as auto theft, but "does not require that the offender intend to permanently deprive the owner of the vehicle." Cf. Williams, 537 F.3d at 974-75.

In holding that Walker's convictions for auto theft and temporary auto theft are not qualifying predicate offenses, we necessarily conclude that he is not subject to the

180 month mandatory minimum imposed under 18 U.S.C. § 924(e)(1). The district court calculated Walker's Guidelines level as 30, with a base-level of 33 and a 3-level reduction for acceptance of responsibility, and his criminal history category as V. Based on this calculation, the district court sentenced Walker to the mandatory minimum of 180 months, which was within the erroneously calculated Guidelines range of 151-188 months. This is a procedural sentencing error. See Gall v. United States, 128 S. Ct. 586, 598 (2007). On such an error, we remand for resentencing unless the government can "[meet] its burden to show that the district court's procedural error did not substantially influence the outcome of the sentencing proceeding." United States v. Henson, No. 07-1993, 2008 WL 4964281, at *2 (8th Cir. Nov. 24, 2008). At Walker's sentencing hearing the district court stated that it felt that the sentence was disproportionately high and imposed it only because of the court's belief that it was constrained by the mandatory minimum. Therefore, the error is not harmless.

III.

For the foregoing reasons, we reverse and remand for resentencing.

_____