**UNITED STATES of America,**
**Plaintiff,**

v.

**Stevie Lavell WEST, Defendant.**

**No. 3:08–cr–0079–JAJ.**

United States District Court,
S.D. Iowa,
Davenport Division.

April 7, 2009.

Mark C. Meyer, Kinnamon–Kinnamon–Russo–Meyer, Cedar Rapids, IA, for Defendant.

Melisa Zaehringer, United States Attorney, Davenport, IA, for Plaintiff.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the court pursuant to the defendant's March 5, 2009, Motion to Suppress Evidence [Dkt. 57]. The court held an evidentiary hearing on this motion on March 31, 2009, at which the defendant was present and represented by Mark Meyer. The government was represented by Melisa Zaehringer. The defendant's motion to suppress is granted.

In this case, the defendant contends that his right to be free from unlawful search and seizure was violated when he was detained and then arrested and interrogated on May 29, 2008. The government contends that the defendant was properly detained for the crime of jaywalking, that a lawful pat down for weapons revealed the presence of crack cocaine in the defendant's pants pocket and that he gave a voluntary confession following the proper administration of his *Miranda* warnings. The court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

On May 29, 2008, Officers Nicholas Shorten and Geoffrey Peiffer were on routine patrol as officers of the Davenport Police Department. Officers Shorten and Peiffer were assigned to the NETS patrol in a high-crime neighborhood in Davenport, Iowa, a three to four block radius of 14th and Gaines Streets.

NETS is an aggressive patrol philosophy adopted for particularly high-crime neighborhoods.[1] Its strategy is to stop and cite or arrest people for even the most minor infractions so as to identify persons and deter criminal activity. While traveling in an unmarked police car, Officers Shorten and Peiffer observed an automobile parked by the side of the road with two occupants who made no eye contact with the officers. This fact alone is considered unusual for the neighborhood. Shortly thereafter, police observed the defendant Stevie West and Cameron Howard cross the street headed in the direction of the parked car. They were "jaywalking", meaning they were crossing the street at other than an intersection or crosswalk. The police proceeded further down the street, turned around and returned to the intersection. There they observed the defendant and Howard walking in the middle of the road. The officers then observed the defendant and Howard turn north onto Scott Street, and the officers subsequently drove to the location. While driving to their location, the officers again observed the defendant and Howard jaywalking. There is no evidence that the suspects obstructed traffic.

The defendant and Howard were approached by the police. They are well known by the police for prior episodes involving gun crimes, drugs and violence. They are reputed to be members of the Seventeenth Street Boys, a violent Davenport street gang. Accordingly, West and Howard were patted down for the presence of weapons. Officer Shorten felt a small lump in the defendant's right shorts pocket. Officer Shorten immediately believed that the lump was crack cocaine or some other controlled substance. Shorten reached into the defendant's pants pocket, pulled out crack cocaine and placed the defendant under arrest.[2] Shortly thereafter, he was placed in a patrol car. He was given proper *Miranda* warnings. In an effort to determine whether he was immediately willing to cooperate, one of the officers asked the defendant if he wished to speak with the police or go to jail. The defendant chose to speak to the police.

Once he arrived at the police station, the defendant was placed in a police interview room. He was immediately asked whether he remembered the *Miranda* warnings he had been given when arrested, whether he understood them and whether he was willing to talk to the police. The defendant unequivocally responded in the affirmative to all three questions. He was then interrogated for over an hour. He signed up as a confidential informant and agreed to work with the police.

Shortly after the interview began, the defendant asked about going to prison. Sergeant Kevin Smull specifically told the defendant that there were options. First, the defendant could be interviewed and released that evening. He was also informed that he could be taken to jail. However, at no point did any of the detectives promise the defendant that he would not be prosecuted. In fact, Sergeant Smull told the defendant that he could not make such a promise and that the defen-

---

1. The acronym NETS stands for Neighborhoods Energized To Succeed.

2. The defendant contends that Howard threw the crack and police picked it up off the ground.

dant was already a potential target for federal prosecution. An examination of that interrogation in its entirety shows that the defendant's statements were given freely and voluntarily, that he was not threatened, lied to or promised that he would not be prosecuted. The defendant was released at the end of the interrogation. Because he did not maintain contact with the police as he promised, a warrant was later secured for his arrest.

## I. CONCLUSIONS OF LAW

### A. Standing

■ After the police officers testified about the events of May 29, 2008, the defendant took the witness stand. In his testimony, the defendant told a remarkably different version of the events of that day. He denied that the crack cocaine was in his pants. He claimed that Mr. Howard had possessed the crack cocaine and threw it on the ground. He claims that the police picked up the crack cocaine and attributed it to the defendant as he was the person physically closest to the drugs.

The court does not believe the defendant. However, the court raised the issue of standing, sua sponte, because the defendant, through his testimony, alleges facts which, if believed, demonstrate that his rights were not violated. That is, if Howard threw the drugs on the street and the police retrieved abandoned contraband from the street, the defendant would have no legitimate expectation of privacy in the place searched or the thing seized and, therefore, no standing to object.

The government cites cases standing for the obvious proposition that a defendant does not have standing to object to the seizure of abandoned contraband. However, the issue presented is whether the defendant's false testimony should work some sort of an estoppel as to his Fourth Amendment claims. This argument has some attraction because the court would

not have granted an evidentiary hearing had the defendant made his factual claims in his motion. However, despite the defendant's false testimony, the court believes that the true facts demonstrate that his Fourth Amendment right to be free from unreasonable seizure was violated. For that reason, the court concludes that the defendant has standing to object to his seizure and subsequent search.

### B. The Terry Stop

■ The Fourth Amendment provides protection against unreasonable searches and seizures by the government. *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir.2008) (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). "A police officer may stop and briefly question a person if the officer has a reasonable, articulable suspicion of criminal activity." *United States v. Banks*, 553 F.3d 1101, 1104 (8th Cir.2009) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). To determine whether an investigatory stop was justified, courts look at the totality of the circumstances, "allowing officers to draw on their experience and training." *Hughes*, 517 F.3d at 1016 (citing *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744). "Reasonable suspicion must be supported by 'specific and articulable facts.'" *Hughes*, 517 F.3d at 1016 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). "In order for such a stop to be constitutional under the Fourth Amendment, the officer must be aware of 'particularized, objective facts, which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Walker*, 555 F.3d 716, 719 (8th Cir.2009) (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir.1983)). An officer's reasonable suspicion must be more than an "inchoate 'hunch[.]'" *Walk-*

*er,* 555 F.3d at 719 (quoting *United States v. Fuse,* 391 F.3d 924, 929 (8th Cir.2004)).

■ The government argues that the officers had reasonable suspicion to conduct a *Terry* stop because the officers observed the defendant and Howard violating a municipal ordinance prohibiting persons from "jaywalking." *See Banks,* 553 F.3d at 1104 ("When a person commits a crime in the presence of the officer, that conduct gives the officer probable cause— a higher standard than reasonable, articulable suspicion—to seize the person.") (citations omitted). The government provided to the court the text of Davenport Municipal Code 10.54.040, which states:

> Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection *shall yield the right-of-way to all vehicles upon the roadway except that cities may restrict such a crossing by ordinance.*
>
> Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right-of-way to all vehicles upon the roadway.
>
> Where traffic control signals are in operation at any place not an intersection pedestrians shall not cross at any place except in a marked crosswalk. (Ord. 84–247 § 16.4).

Davenport Municipal Code 10.54.040 (emphasis added). Iowa Code § 321.328 is identical to Davenport Municipal Code 10.54.040. The ordinance does not categorically prohibit persons from crossing the street at any point other than a marked crosswalk or an unmarked crosswalk at an intersection. This is clear from the last section of the Iowa Code and the Davenport Municipal Code that permits cities to make such activity unlawful by passing a separate ordinance. Instead, such activity is unlawful pursuant to 10.54.040 only if persons fail "to yield the right-of-way to all vehicles upon the roadway[.]" *See Hedges v. Conder,* 166 N.W.2d 844, 853 (Iowa 1969) (holding that a plaintiff violated I.C.A. § 321.328 and corresponding municipal ordinance when plaintiff walked into street to stop traffic to permit truck to exit driveway onto street, failing to yield to right-of-way of vehicular traffic). The government failed to provide any evidence that the defendant did not yield to the right-of-way of all vehicles on the street, or in any way obstructed traffic. Therefore, the court finds that the defendant and Howard did not violate Davenport Municipal Code 10.54.040.

■ Besides its argument that the officers observed the defendant and Howard violate a municipal ordinance, the government provides no evidence of "particularized, objective facts" demonstrating that the officers had reasonable suspicion. The government presented evidence that the defendant and Howard were in a high-crime area at the time of the *Terry* stop. The government also presented evidence that the officers were aware of defendant's violent history, including that the defendant had been involved in drug crimes and gun sales. Both of these factors—the defendant's presence in a high-crime area and the defendant's history of illegal activity—are factors that are properly considered in determining whether reasonable suspicion exists. *See United States v. Cornelius,* 391 F.3d 965, 967 (8th Cir.2004) (citing *United States v. Atlas,* 94 F.3d 447, 451 (8th Cir.1996); *United States v. Hoosman,* 62 F.3d 1080, 1081 (8th Cir.1995)). However, "an individual's mere presence in a high crime area does not create reasonable suspicion that the individual is involved in criminal activity[.]" *United States v. Gilliam,* 520 F.3d 844, 847–48 (8th Cir.2008) (citing *Hughes,* 517 F.3d at 1015). Furthermore, an officer's knowledge of a defendant's criminal history

alone is not enough to create reasonable suspicion. *United States v. Johnson,* 427 F.3d 1053, 1057 (7th Cir.2005) (citation omitted). Examining the totality of the circumstances, the court finds that the defendant's presence in a high-crime area and the officers knowledge of his criminal history, without more, failed to create reasonable suspicion that criminal activity was afoot.

■■■ "If the investigatory stop is not justified with reasonable suspicion or if the investigating officers exceed the stop's proper scope, any evidence derived from the stop is inadmissible at trial." *United States v. Wheat,* 278 F.3d 722, 726 (8th Cir.2001) (citing *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Ramos,* 42 F.3d 1160, 1164 (8th Cir.1994)). The defendant's statements and the drugs seized by officers derived from the initial *Terry* stop. Because that stop was not justified by reasonable suspicion, such evidence must be suppressed.

### C. Involuntary Statements by the Defendant

■■■ Although the defendant's claims regarding the voluntariness of his post-arrest statements are moot due to the court's ruling that the *Terry* stop was not supported by reasonable suspicion, the court will still address these claims. The defendant contends his statements to the officers in the police car and to Sergeant Smull should be suppressed because they were made involuntarily. The defendant claims that Sergeant Smull offered immunity-like protection to him if he answered questions and agreed to become a police informant.

■■■ In *United States v. Kilgore,* the Eighth Circuit Court of Appeals identified the test to determine the voluntariness of a defendant's statements. 58 F.3d 350, 353 (8th Cir.1995).

The appropriate test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired ... In making this determination, courts will inquire into the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any pressure.

*Id.* (citations omitted). "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." *United States v. Astello,* 241 F.3d 965, 967–68 (8th Cir.2001) (quoting *Berkemer v. McCarty,* 468 U.S. 420, 433, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). "[A] promise made by law enforcement 'does not render a confession involuntary per se' ... It is simply one factor to be considered in the totality of the circumstances." *United States v. Brave Heart,* 397 F.3d 1035, 1041 (8th Cir.2005) (quoting *United States v. LeBrun,* 363 F.3d 715, 725) (internal quotation omitted). "Numerous cases have held that questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendants's will to be overborne." *Astello,* 241 F.3d at 967–68 (quoting *Jenner v. Smith,* 982 F.2d 329, 334 (8th Cir.1993)).

After examining the totality of circumstances, the court finds that the defendant voluntarily made statements to the officers following his arrest. The evidence presented at the suppression hearing, including the videotape of the interrogation and Sergeant Smull's testimony, demonstrates that the will of the defendant was at no

point overborne and that his "capacity for self-determination" was never impaired. *Kilgore,* 58 F.3d at 353 (citations omitted). Proper *Miranda* warnings were given. After that, the defendant became cooperative to curry favor with the police. For that reason, the court finds that the defendant's post-arrest statements were voluntary.

Upon the foregoing,

**IT IS SO ORDERED,** that the defendant's Motion to Suppress Evidence [Dkt. 57] is granted. The crack cocaine seized from the defendant on May 29, 2008, will not be admitted at trial. Similarly, his statements made thereafter will not be admitted.