# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1607

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Jil Antonio Resinos, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  September 23, 2010
Filed:  October 21, 2010

_____

Before LOKEN, HANSEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Jil Antonio Resinos pled guilty to one of five counts of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court[1] sentenced him to 120 months in prison, the mandatory minimum sentence based on its drug quantity calculation. He appeals, arguing that the court's calculation improperly aggregated amounts of meth derived from counts dismissed pursuant to the plea agreement. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, Western District of Arkansas.

An investigation of Resinos began on June 7, 2009, when a confidential informant (CI) contacted the Siloam Springs police, saying that he or she could purchase meth from Resinos. Resinos sold meth to the CI in six controlled purchases:

- June 9: 3.28 grams of a mixture of meth.
- June 10: 9.43 grams of actual meth.
- June 19: 9.3 grams of actual meth.
- June 29: 1.3 grams of actual meth.
- July 7: 25.3 grams of actual meth.
- August 12: 13.8 grams of actual meth.

The indictment charged five counts of possession with intent to distribute meth for the sales on June 9, 10, 19, 29, and July 7. Count five charged Resinos with distribution on July 7. Resinos pled guilty only to count five; in exchange, the government dismissed the remaining counts.

Calculating the guideline range, the presentence investigation report (PSR) held Resinos accountable for more than 50 grams of actual meth by aggregating amounts from the dismissed counts as "relevant conduct," conduct that was part of the same course of conduct or common scheme or plan as the offense of conviction. *See* **U.S.S.G. § 1B1.3(a)(1)(A)**. The PSR thus calculated a total offense level of 29 that, with a criminal history of Category I, produced a guideline range of 87 to 108 months. The PSR determined, however, that the (same) aggregated quantity of meth used in calculating the offense level triggered a mandatory minimum sentence of 120 months under 21 U.S.C. § 841(b)(1)(A)(viii).

The parties disputed whether the dismissed relevant conduct should be aggregated to trigger a mandatory minimum sentence. The district court applied § 841(b)(1)(A)(viii), sentencing Resinos to the mandatory minimum of 120 months. Resinos appeals. In reviewing for procedural error, such as an improper calculation

of the advisory guidelines range, this court reviews de novo the district court's interpretation and application of the sentencing guidelines and statutes, and its fact-findings for clear error. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Blankenship*, 552 F.3d 703, 704 (8th Cir. 2009); *United States v. Hawkins*, 548 F.3d 1143, 1149 (8th Cir. 2008).

It is unlawful to possess with the intent to distribute a controlled substance. **21 U.S.C. § 841(a)**. For "a violation of . . . [§ 841(a)] involving . . . 50 grams or more of methamphetamine," a defendant "shall be sentenced to a term of imprisonment which may not be less than 10 years." **21 U.S.C. § 841(b)(1)(A)(viii)**.

Resinos argues that in calculating the quantity of drugs "involv[ed]" in a violation of § 841(a), the district court is limited to the quantity of drugs in the count of conviction – which here would not trigger the mandatory minimum under § 841(b)(1)(A)(viii). He asserts that because this is a distribution case, the district court erred by aggregating quantities of meth from his relevant conduct in applying the mandatory minimum.

This court, however, has ruled to the contrary. *See United States v. Jenkins*, 537 F.3d 894 (8th Cir. 2008) (*Jenkins II*). In *Jenkins II*, a jury convicted the defendant, among other charges, of possessing with the intent to distribute five grams or more of cocaine base. At sentencing, the district court determined Jenkins was responsible for 96.20 grams of cocaine base "by adding the .84 grams of cocaine base found in his pocket, the 14 grams in his apartment, and the 80.36 grams cash equivalent [the value in cocaine base of the cash found in an apartment Jenkins entered during an encounter with undercover police officers]." *Id.* at 896. The district court found that Jenkins's mandatory minimum for the distribution count was 60 months. This court disagreed, holding that because the district court found Jenkins responsible for more than 50 grams of crack, he was subject to a mandatory minimum

of 120 months. *See id.* at 896-97 ("[Section] 841(b)(1)(A) establishes Jenkins's statutory minimum based upon the district court's drug quantity finding.").

Resinos tries to distinguish *Jenkins II* by arguing that "the relevant quantity was directly tied to the offense at issue" in that case. This argument fails for two reasons.

First, it ignores that the 50-gram threshold of § 841(b)(1)(A) was reached by holding Jenkins responsible for the 80.36 grams cash equivalent found in the apartment Jenkins entered. In Jenkins's initial appeal, this court noted, "In order to 'accurately reflect the scale of drug trafficking activity, the Guidelines authorize the district court to convert seized money into a quantity of drugs,'" and affirmed the district court's drug-quantity finding under the Guidelines. ***United States v. Jenkins***, 505 F.3d 812, 817-18 (8th Cir. 2007) (*Jenkins I*), *vacated and remanded*, 552 U.S. 1228 (2008) (remanding for further consideration in light of *Kimbrough v. United States*, 552 U.S. 85 (2007)), *quoting* ***United States v. Echols***, 2 F.3d 849, 850 (8th Cir. 1993) (per curiam), *citing* **U.S.S.G. § 2D1.1, cmt. n.12**. By using the converted quantity for the mandatory minimum in *Jenkins II*, this court imported the concept of relevant conduct into the drug quantity calculation used in applying § 841(b)(1).

Second, because § 841(b)(1) establishes minimum sentences based on the amount of the specific substance "involv[ed]" in the violation of § 841(a)*, Jenkins II* necessarily decided that the cash converted came entirely from the sale of cocaine base. Here, the aggregated quantities are more closely tied to the offense than those at issue in *Jenkins II*, because Resinos stipulated that he sold more than 50 grams of actual meth during a series of sales to the CI.

Resinos emphasizes that other circuits do not permit the aggregation of relevant-conduct quantities of drugs to trigger a mandatory minimum in a non-

conspiracy case.[2]  However, because *Jenkins* controls, this panel cannot revisit its interpretation of § 841(b)(1)(A).  *See* **United States v. Kent**, 531 F.3d 642, 657 (8th Cir. 2008) ("'[A] panel of this Court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting en banc.'"), *quoting* **United States v. Wright**, 22 F.3d 787, 788 (8th Cir. 1994).

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____

_____

[2]*See* **United States v. Darmand**, 3 F.3d 1578, 1581 (2d Cir. 1993); **United States v. Estrada**, 42 F.3d 228, 230, 232 n.4 (4th Cir. 1994); **United States v. Sandlin**, 291 F.3d 875, 878-80 (6th Cir. 2002); **United States v. Rodriguez**, 67 F.3d 1312, 1324 (7th Cir. 1995); **United States v. Grissom**, 525 F.3d 691, 698 n.4 (9th Cir. 2008); **United States v. Santos**, 195 F.3d 549, 552-53 (10th Cir. 1999), *abrogated on other grounds by* **United States v. Jones**, 235 F.3d 1231, 1237 (10th Cir. 2000).