# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2951

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Stephen E. Plummer, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 14, 2005
Filed: June 2, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
Judges.

_____

GRUENDER, Circuit Judge.

Stephen Plummer entered a conditional plea of guilty to one count of possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He entered the conditional guilty plea after the district court denied his motion to suppress evidence and statements obtained as a result of a

warrantless search of his car.[1]  On appeal, Plummer argues that the district court erred in denying his motion to suppress.  We affirm.

## I.    BACKGROUND

On March 25, 2003, Corporal John A. Sampietro, Jr. of the Missouri State Highway Patrol received a dispatch report that an ambulance crew was following a small car with a single occupant–a white male–traveling westbound on U.S. Highway 60.  It was reported that the driver of the car, later identified as Plummer, was driving erratically from lane to lane and appeared to be smoking a marijuana cigarette.  As he was driving east on Highway 60, Trooper Sampietro located a car fitting the description in the report heading west on Highway 60 with an ambulance following behind.  Trooper Sampietro crossed the highway and began heading west.  Plummer then turned into the parking lot of a convenience store on Highway 60 and parked behind the store.  Trooper Sampietro pulled in behind Plummer's car in the parking lot.  The ambulance crew indicated to Trooper Sampietro that he had correctly identified the car.

As Plummer walked toward the store entrance, Trooper Sampietro got out of his patrol car, identified himself as a highway patrol officer, and asked Plummer for his license.  Without saying anything, Plummer got back into his car and leaned toward the passenger's seat.  At that point, Trooper Sampietro saw a rifle lying across the passenger's seat and told Plummer to get out of the car.  Plummer complied, and Trooper Sampietro told Plummer that he needed to see his driver's license.  Again, without saying anything, Plummer reached into the car toward the passenger's seat

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri. The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, accepted Plummer's conditional guilty plea and sentenced him.

where the rifle was lying. Trooper Sampietro drew his service weapon, pointed it at Plummer, and told him to get out of the car and not to get back in. Plummer replied that he was trying to get his driver's license. Trooper Sampietro told Plummer not to get back in the car because there was a weapon in the car. Plummer responded that the rifle was not loaded.

After Plummer got out of the car, Trooper Sampietro reholstered his weapon and called for back-up officers. He took the rifle from the passenger's seat and discovered it was loaded. After the back-up officers arrived, Trooper Sampietro made a protective search of the car, checking for additional weapons.[2] He found a utility knife in a storage compartment on the driver's-side door and a machete and a set of digital scales on the back seat. Trooper Sampietro noticed white residue and "green material" consistent with marijuana residue on the scales and utility knife. Trooper Sampietro arrested Plummer, handcuffed him, read him his *Miranda* rights, and conducted a thorough search of his car.

Underneath the front passenger's seat, Trooper Sampietro found a Colgate shaving cream can with a false bottom. He unscrewed the can and found several bags containing methamphetamine and marijuana. He also found scorched aluminum foil and $1,700 in cash in Plummer's pocket. Plummer told Trooper Sampietro that he had the cash because he was in financial difficulty. On the way to jail, Plummer admitted that he had been smoking marijuana while driving. Plummer also told Trooper Sampietro that he had a history of drug use and that he was back on drugs because of a disagreement with his girlfriend.

---

[2]The record is unclear as to Plummer's exact location while Trooper Sampietro waited for back-up and while he conducted a protective search of Plummer's car. However, we do know that Plummer was not handcuffed during that time. As noted below, he was not handcuffed until after he was arrested.

## II.  DISCUSSION

On appeal, Plummer only challenges Trooper Sampietro's initial search of his car for additional weapons.  Plummer does not challenge either Trooper Sampietro's initial investigative stop based on the report of the ambulance crew or Trooper Sampietro's more thorough search of the car and search of his person after finding the machete, utility knife and scales.  Plummer's only argument is that the district court erred in denying his suppression motion because Trooper Sampietro's initial search of the car was not based on officer safety, and therefore, all of the evidence subsequently obtained was "fruit of the poisonous tree" seized in violation of his Fourth Amendment rights.  "When reviewing a denial of a motion to suppress, we examine the factual findings underlying the district court's conclusion for clear error and review de novo the ultimate question of whether the fourth amendment has been violated."  *United States v. Terry*, 400 F.3d 575, 579 (8th Cir. 2005).

In *Terry v. Ohio*, 392 U.S. 1, 24 (1968), the Supreme Court held that a police officer may conduct a protective search for weapons if the officer has an articulable suspicion that an individual is armed and dangerous.  *See United States v. Shranklen*, 315 F.3d 959, 961 (8th Cir. 2003).  *Terry* involved the pat-down search of an individual and not the search of a vehicle, but "its principle (officer safety searches) was eventually extended to include vehicle searches."  *United States v. Rowland*, 341 F.3d 774, 783 (8th Cir. 2003) (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)).  In *Long*, the Supreme Court noted that "roadside encounters between police and suspects are especially hazardous," and held that a limited search of the passenger compartment of a vehicle "is permissible if the police officer possesses a reasonable belief . . . that the suspect is dangerous and the suspect may gain immediate control of weapons."  *Long*, 463 U.S. at 1049.  "The sole justification of the search . . . is the protection of police officers and others nearby . . . ."  *Id.* n.14 (quoting *Terry*, 392 U.S. at 29).

-4-

The test for reasonableness is an objective one. *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990). In the Eighth Circuit, the validity of a protective search "does not depend upon the searching officer actually fearing the suspect is dangerous; rather, such a search is valid if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous." *Rowland*, 341 F.3d at 783 (citing *United States v. Wald*, 216 F.3d 1222, 1227 (10th Cir. 2000), which notes that the circuits are split on the issue of whether a particular officer's actual motivation is relevant to the reasonableness analysis); *see Cummins*, 920 F.2d at 502 (applying this Circuit's objective reasonableness standard in a protective search case, the Court noted that "our conclusion is not changed by [the officer's] testimony that he had no subjective fear that [the defendants] were armed.").

As noted above, Plummer's only argument on appeal is that Trooper Sampietro's initial search of the car for additional weapons was not a permissible protective search because it was not based on officer safety. More specifically, he contends that Trooper Sampietro could not have been concerned for his safety because by the time he conducted the search, he had reholstered his gun and back-up officers had arrived at the scene. Plummer's argument improperly focuses on whether Trooper Sampietro was actually motivated by concern for his own personal safety when he searched Plummer's car for additional weapons. Plummer's argument has no merit because, as we discussed above, a police officer's subjective motivation is irrelevant to our Circuit's objective reasonableness analysis.

Based on the "specific and articulable facts" surrounding Trooper Sampietro's search of Plummer's car for additional weapons and the "rational inferences from those facts," we conclude that the search was reasonably warranted. *See Long*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21). Plummer twice reached toward the rifle on the passenger's seat of his car without explaining to Trooper Sampietro what he was doing. He also lied to Trooper Sampietro about the rifle not being loaded. In addition, based on the report of the ambulance crew, Trooper Sampietro was dealing

with an individual who may have been on drugs. A hypothetical officer in the same situation as Trooper Sampietro could reasonably believe that Plummer was dangerous and that there may have been additional weapons in the car over which Plummer could have gained immediate control if he were to break away from police control or if he were permitted to re-enter his car. *See id.* at 1051-52.

The legal discovery of the machete and the utility knife and digital scales with white and green residue supported Trooper Sampietro's warrantless search of the remainder of Plummer's car under the "automobile exception" to the Fourth Amendment's warrant requirement. *See Rowland*, 341 F.3d at 784 (noting that the "automobile exception" applies where police officers have probable cause to believe a vehicle contains contraband or other evidence of a crime before they search). Trooper Sampietro's more thorough search of Plummer's car and his search of Plummer's person also constituted a valid search incident to arrest. *See United States v. Poggemiller*, 375 F.3d 686 (8th Cir. 2004); *United States v. Pratt*, 355 F.3d 1119, 1124 (8th Cir. 2004) ("The search of an arrestee's person has long been upheld as reasonable under the Fourth Amendment . . . .").

## III. CONCLUSION

For the reasons discussed above, we affirm the district court's denial of Plummer's suppression motion and affirm Plummer's conviction.

_____