# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2261

_____

United States of America,            *
                                           *

        Appellee,         *

                                           *   Appeal from the United States

   v.                        *   District Court for the

                                           *   Western District of Missouri.

                                           *

Michael J. Alexander,         *

                                         *

        Appellant.       *

_____

Submitted: January 15, 2009
Filed:  July 20, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Michael Alexander appeals the district court's[1] denial of his motion to suppress evidence that he received and possessed child pornography in violation of 18 U.S.C. § 2252(a)(2) and 2252(a)(4).  We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

I.

On October 14, 2006, a 31-year-old woman, JC, contacted the Kansas City, Missouri, police department ("KCPD") and informed them that the appellant, Michael Alexander, had secretly videotaped her and other women while engaged in consensual sexual activity with himself. JC stated that she learned about the secret videotapes from Alexander's then-girlfriend, ES, who discovered the tapes and video equipment in Alexander's home.[2] On the next day, Detective Catherine Johnson took a written statement from ES concerning what she had discovered. ES told Det. Johnson that, after she discovered a hidden camera in Alexander's bedroom, she watched several videocassettes and DVDs located in his armoire. The VHS tapes contained depictions of women, including JC, having sex in the bedroom and naked in the backyard in and around Alexander's hot tub. ES also informed Det. Johnson that she watched some DVDs that contained images of the hot tub without anyone in it. ES subsequently found another camera hidden above Alexander's hot tub.

Based on the information provided by JC and ES, police obtained a warrant to search Alexander's residence for evidence of invasion of privacy. The warrant included within the items to be searched "[d]igital storage devices consisting of all such equipment designed to collect, analyze, create, display, convert, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data, to include but . . . not limited to desktop/laptop/handheld computers . . . ." It also included storage devices such as hard drives and floppy disks, "still photos, negatives, videotapes, DVDs, films, undeveloped film" and any documents relating to the victims.

During the execution of the search warrant, police arrested Alexander. In

_____

[2]The names of JC and ES have been redacted.

the course of the search, police found an email printout confirming a subscription to a child pornography website in an envelope in a desk in Alexander's office. Images of child pornography, some of which contained addresses for child pornography websites printed on them, were found in Alexander's attic. Additionally, police seized a laptop computer, a digital camera, TVs, and VCRs.

Alexander was taken to the police station, where he waived his Miranda[3] rights. After being shown the images found in his attic, he admitted that they were his but claimed that he viewed them as art and not pornography. Alexander acknowledged, however, that most people would not view the images in the same way.

Police then gave the computer and digital camera to Detective Brian Roach, the computer forensic analyst for the KCPD, to review the items for invasion-of-privacy violations. Det. Roach advised that, if he discovered child pornography, he would ask the detectives to get a second search warrant. Early during his search, Det. Roach discovered child pornography, stopped his review, and directed the other officers to get a second search warrant. The second warrant authorized the search of the already seized items for child pornography and authorized a second search of Alexander's home for evidence of the same. During the second search of Alexander's residence, police seized various items, including additional VHS tapes and photographs.

Alexander was indicted on eight counts of receiving child pornography over the Internet in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). He then moved to suppress the evidence on various grounds. First, he argued that Missouri's invasion-of-privacy statute does not prohibit the secret recording of a sexual

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

encounter in which the recording party is a participant. Thus, according to Alexander's argument, if the magistrate had been informed by Det. Johnson that Alexander was present in some of the recordings discovered by ES, the magistrate would have known that no crime had been committed and that police lacked probable cause to search his home. Second, Alexander argued that the first warrant was overbroad because it permitted the seizure of all forms of electronic media as well as all photographs. Third, he contended that police unconstitutionally expanded the scope of their search after the discovery of child pornography during the execution of the first search warrant. Fourth, he claimed that the warrant was so defective that no officer could have in good faith relied on the warrant. Finally, he sought suppression of the items seized pursuant to the second search warrant and suppression of his statements to police as fruits of the poisonous tree. The district court rejected all of these arguments. After entering a conditional guilty plea reserving his right to appeal the denial of his suppression motion, the court sentenced him to 72 months imprisonment.

## II.

"We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." United States v. Clarke, 564 F.3d 949, 958 (8th Cir. 2009) (quotation omitted). Alexander's appeal lives or dies on the validity of the search executing the first warrant. Only if the warrant was not supported by probable cause and overbroad, or if officers unlawfully expanded the search beyond the scope permitted by the warrant, can Alexander hope to get his poisonous-tree argument off the ground and obtain suppression of the child pornography evidence.

The first warrant was valid in all respects. "Probable cause has been shown if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular

place." United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008) (quotation omitted), cert. denied, 129 S. Ct. 2069 (2009). "A search warrant may be invalidated because of omitted facts if (1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading and (2) the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." Id. (quotation omitted).

Alexander alleges that Det. Johnson intentionally or recklessly omitted the fact that he appeared in some of the secretly recorded videos engaged in sexual acts with some of his victims. This omission was material, he contends, because the Missouri invasion-of-privacy statute, Mo. Rev. Stat. § 565.252, only prohibits the filming of a nude person against his or her consent when that person has a reasonable expectation of privacy. Missouri law defines "[p]lace where a person would have a reasonable expectation of privacy" as "any place where a reasonable person would believe that a person could disrobe in privacy, without being concerned that the person's undressing was being viewed, photographed or filmed by another[.]" Mo. Rev. Stat. § 565.250. According to Alexander, whenever a person undresses in front of another, that person forfeits any reasonable expectation of privacy he or she might have. Thus, under this view, if Det. Johnson had revealed in her warrant application that Alexander was shown together with his victims in a state of nudity and engaged in sexual acts, the magistrate would have realized that probable cause was lacking because no crime had been committed.

Alexander relies on inapposite cases to make this argument. For instance, he claims that People v. Drennan, 101 Cal. Rptr. 2d 584 (Cal. Ct. App. 2000), held that California's privacy statute does not prohibit the video recording of someone engaged in sexual acts without that person's consent. However, Drennan held that the California eavesdropping statute did not prohibit such conduct because another

statute, functionally identical to the Missouri invasion of privacy law at issue here, expressly prohibits the surreptitious recording of someone in any "area in which the occupant has a reasonable expectation of privacy . . . ." Id. at 590 (comparing Cal. Penal Code § 647(k) (2000) (current version at Cal. Penal Code § 647(j)), which prohibits the viewing or visual recording of someone in an area of privacy without his or her consent, with Cal. Penal Code § 632(a), which prohibits eavesdropping upon confidential communications) (original in italics). Thus, Drennan states that Alexander's conduct would be prohibited under the California invasion of privacy statute, and, by implication, Mo. Rev. Stat. § 565.252.

Alexander also relies on Fourth Amendment cases that refused to suppress the surreptitious recordings of conversations during a criminal investigation. See United States v. White, 401 U.S. 745, 751-52 (1971) (holding that defendant had no reasonable expectation of privacy in not being electronically monitored when discussing criminal matters with a government informant); United States v. Corona-Chavez, 328 F.3d 974, 980-81 (8th Cir. 2003) (holding that defendant had no reasonable expectation of privacy in a hotel room where an undercover informant consented to the recording of a drug deal). The *prima facie* difference between the furtive eavesdropping upon criminal conversations to which government informants are a party and the secret recording of a person in a state of nudity or engaged in sexual activity casts doubt on the relevance of these cases to the interpretation of the Missouri privacy law. In any event, it is for the Missouri Supreme Court, not this court, to decide whether "reasonable expectation of privacy" under the Fourth Amendment is relevant to interpreting that phrase in the Missouri privacy statute. Additionally, although the Missouri Supreme Court has not ruled on the meaning of "reasonable expectation of privacy" in sections 565.250 and 565.252, at least one other court has rejected this reading of a comparable invasion-of-privacy statute. See State v. Jahnke, 762 N.W.2d 696, 700 (Wis. Ct. App. 2008), review denied by, 765 N.W.2d 578 (Wis. 2009) ("It is one thing to be viewed in the nude by a person at some point in time, but quite another

to be recorded in the nude so that a recording exists that can be saved or distributed and viewed at a later time.").

More fundamentally, however, Alexander's statutory interpretation argument is beside the point because a magistrate reviewing a warrant application is charged with the duty of determining whether a "fair probability that contraband or evidence of a crime will be found in a particular place." Hart, 544 F.3d at 914 (quotation omitted).  Indeed, "[i]t is not necessary for an affidavit to include the name of the specific crime alleged." United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007), cert. denied, 128 S. Ct. 875 (2008).  "Rather, only a *probability* of criminal conduct need be shown." Id. (quotation omitted).  Absent a contrary ruling by a controlling authority, a neutral magistrate could reasonably assume that one does not sacrifice his or her privacy interest to the entire world whenever one permits another to view himself or herself in the nude.   Thus, even if Det. Johnson had supplemented the affidavit with the information that Alexander was present in the secretly recorded videos, probable cause would have remained.

Alexander also argues that the warrant was facially overbroad and that the execution of the search exceeded the warrant's scope when law enforcement began looking for evidence of child pornography.  Alexander's overbreadth challenge is based on his argument that there was no evidence that his computer was used in making the surreptitious recordings and no probable cause to seize his photographs because they depicted adult women.  "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue . . . ." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000).  "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant . . . ." Summage, 481 F.3d at 1078 (quotation omitted).

With regard to the computer, Alexander bases his argument on the fact that

ES only found depictions of nudity or sexual activity recorded on VHS cassette tapes. Since VHS is a non-digital format, he argues, there was no probable cause to justify searching his computer and other digital devices. Alexander's argument ignores the fact that Det. Johnson stated in her warrant application that Alexander had, on one occasion, used a digital camera to photograph JC performing oral sex without her consent and ES had observed recordings of the hot tub, albeit without any people depicted therein, on DVDs found in Alexander's bedroom. Given the surrounding circumstances, it was a fair inference that illicit recordings of people in a state of nudity or sexual activity would be found stored on digital devices, including the computer where evidence of child pornography was discovered. See United States v. Flanders, 468 F.3d 269, 271-72 (5th Cir. 2006) (use of digital camera to photograph naked child supported probable cause to search computer).

Similarly, Alexander argues that his photographs were improperly seized because they depict adult women and, therefore, are not evidence of criminal activity.[4] Although the photographs depict adult women, the first warrant was issued on suspicion of secretly recording his guests, and the photographs show women in various states of undress. Any photographs of nude or partially nude women were relevant to the search. Furthermore, it would have been difficult, and possibly more intrusive to Alexander's privacy, for law enforcement to conduct an on-site review of each of more than 600 photographs to determine whether they were evidence of illegal conduct. See Summage, 481 F.3d at 1079 ("As a practical matter, it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items."); United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999) (holding that, because police "could not practically view more than 300 videos at the search site," they did not exceed scope

_____

[4]Because we hold that the warrant was supported by probable cause and not overbroad, we need not address Alexander's argument that the good-faith exception to the warrant requirement, as articulated in United States v. Leon, 468 U.S. 897 (1984), should not apply here.

of warrant when they seized 300 videos to be viewed elsewhere).

Next, Alexander argues that police unlawfully expanded the scope of the invasion-of-privacy search into a search for child pornography. This claim is without merit. Under the plain-view doctrine, police are permitted "to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997) (quotation omitted). Alexander does not argue that police searched any area of his home not permitted by the search warrant. Thus, he concedes that police were lawfully present in each area where they found evidence of child pornography. Furthermore, the criminal character of photographs of underage children, on which were printed the addresses of child pornography websites and which were accompanied by an email printout confirming a subscription to a child pornography website, was immediately apparent. See United States v. Carey, 172 F.3d 1268, 1272 (10th Cir. 1999) (incriminating nature of photographs depicting children engaged in sexual acts was immediately apparent). Therefore, these items were lawfully seized pursuant to the plain-view exception to the warrant requirement.

Finally, Alexander's arguments for the suppression of evidence seized during the execution of the second search warrant and the statements he made while in police custody also fail. The discovery of child pornography during the search for evidence of privacy invasion supplied ample probable cause for a warrant to conduct further searches of Alexander's home, computer, and digital camera. As the first search was valid, there is nothing to taint the second search. Similarly, because there was no prior illegality, the statements Alexander made while in custody were likewise untainted.

### III.

Accordingly, we affirm the judgment below.

———————