# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2074

_____

Josh Lorenzo Williams; Phillip Michael Porter, Jr.

*Plaintiffs - Appellants*

v.

Scott Decker, Official and Individual capacity; Jeffrey Forck, Official and individual capacities; Matthew Stephens, Official and individual capacities; Rosanna Arens, Official capacity only; City of Columbia, Missouri

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: April 14, 2014
Filed: July 18, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Josh Williams and Phillip Porter brought claims under 42 U.S.C. § 1983 against law enforcement officers Scott Decker, Jeffrey Forck, and Matthew Stephens ("the officers"). These claims arose from an incident in which the officers drew their weapons, removed Williams and Porter from a vehicle, handcuffed them, performed

a protective sweep of the vehicle, and eventually released them.  The district court[1] granted the officers' motion for summary judgment on the basis of qualified immunity.  Williams and Porter appeal, and we affirm.

## I.    Background

While conducting motorcycle training in the parking lot of a city park in Columbia, Missouri, the officers observed a vehicle parked in the area where they were training.  The vehicle, which was parked diagonally across two parking spaces, had arrived while the officers drove their motorcycles to another portion of the park for a brief period of time.  Officer Decker, who was driving the lead motorcycle, initially approached the vehicle to request that the driver remove it from the training area.  As the officers drove toward the vehicle, Officer Decker and Officer Forck, who was immediately behind Officer Decker, observed two individuals sitting in the vehicle.  It appeared to Officer Forck that the driver was drinking from a container wrapped in a paper bag—a tactic that, according to Officer Forck, is commonly used to conceal alcohol.  Officers Forck and Decker also reported that upon the seeing the officers, the driver and the passenger of the vehicle began moving around while keeping their hands concealed from the officers' view.  Officers Forck and Decker activated the emergency lights on their motorcycles at approximately this time.

Williams and Porter, the occupants of the vehicle, had just arrived at the park, where they planned to listen to music.  Porter, the passenger, was drinking beer from a container that was wrapped in a paper bag.  Williams, the driver, also had a container of beer, but he had yet to open it when the officers arrived.  According to Porter, Williams had his hand on his container of beer, which was located beside him, and was getting ready to open it.  Williams, however, claims that his alcohol was in the backseat of the vehicle at this time.

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

As the officers approached, they ordered Williams and Porter to show their hands. According to the officers, Williams did not comply promptly with these commands. Williams admits that he first saw the officers when he opened the driver's side door to spit, although he did not realize immediately who they were, and that he later heard the officers say something. Upon hearing the officers, Williams reached to turn down the volume of the music playing in the vehicle, which was at seventy percent capacity, and saw the officers draw their weapons at this time. Porter likewise could not hear what the officers were saying when he first saw them. Officer Decker recounts that he drew his weapon after Williams failed to show his hands and after he "went from laid back in the seat[] to leaning forward with his hands concealed." Officer Forck unholstered his weapon after Williams "put his hands down to where I could not see them." Upon seeing the officers with their firearms drawn, Williams and Porter immediately raised their hands.

The officers removed Williams and Porter from the vehicle and handcuffed them. Before he was handcuffed, Porter claims that one of the officers made him pour out both his and Williams's containers of beer. The officers asked Williams whether there were any weapons in the vehicle, and Williams informed them that he kept a firearm in the vehicle. The officers then removed the firearm from the glove compartment and performed a protective sweep of the vehicle.

The officers requested the criminal histories of Williams and Porter. After learning that there were no warrants for Porter's arrest, the officers allowed him to leave—approximately thirty minutes after the initial encounter. A police dispatcher advised Officer Forck that Williams had a felony conviction for a weapons violation while intoxicated. After verifying with a police sergeant that an individual with this criminal history could not possess a firearm lawfully and after again confirming Williams's criminal history with the police dispatcher, Officer Forck informed Williams that he was under arrest. Williams tried to explain that he had pled guilty to a misdemeanor, not a felony, making his possession of the firearm legal. But the

officers requested a transport unit to take Williams to the police station for booking. While Officer Decker waited with Williams for the transport unit to arrive, Officer Forck drove to the police station to verify Williams's criminal history, and Officer Stephens left to prepare an arrest sheet. Once Officer Forck arrived at the police station, he learned that Williams indeed had pled guilty to a misdemeanor. Officer Forck instructed Officer Decker, who was waiting with Williams for the transport unit to arrive, to release Williams. Officer Decker did so approximately one hour after the initial encounter.

Williams and Porter brought this lawsuit against the officers under § 1983 for their roles in this incident, primarily alleging violations of the Fourth Amendment. The district court granted the officers' motion for summary judgment on the basis of qualified immunity. This appeal followed.

## II.    Discussion

### A.    The Fourth Amendment

We review the grant of summary judgment on the basis of qualified immunity *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *LaCross v. City of Duluth*, 713 F.3d 1155, 1157 (8th Cir. 2013). To determine whether the officers are entitled to qualified immunity, we ask (1) "whether the facts alleged or shown, construed in the light most favorable to [the plaintiffs], establish a violation of a constitutional . . . right," and (2) "whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his] actions were unlawful." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (second alteration in original) (quoting *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)). Unless we answer both of these questions in the affirmative, the officers are entitled to qualified immunity. *See id.*

-4-

Williams and Porter contend that the officers exceeded the scope of an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Under the principles set forth in *Terry*, "[a] law enforcement officer may detain a person for investigation without probable cause to arrest when the officer 'has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" *United States v. Morgan*, 729 F.3d 1086, 1089 (8th Cir. 2013) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (internal quotation marks omitted). This determination is based upon the totality of the circumstances. *Id.* "Reasonable suspicion is a lower threshold than probable cause, and it requires considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Carpenter*, 462 F.3d 981, 986 (8th Cir. 2006) (internal citation omitted).

Reasonable suspicion that Williams was operating a vehicle while intoxicated justified the officers' investigatory stop of the vehicle. *See* Mo. Rev. Stat. § 577.010.1 ("A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition."); *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 549-51 (Mo. banc 2003) (concluding that driver's license was appropriately suspended for operating a vehicle where an individual was sitting behind the steering wheel in a parking lot with the key in the ignition and with the engine running). The officers observed that the vehicle was parked diagonally across two parking spots. Errant parking such as this, when combined with Officer Forck's observation of what he believed to be alcohol consumption by the driver of a vehicle that had just arrived at the park, is a reasonable basis for suspicion of illegal activity. Williams's gestures as the officers approached the vehicle reasonably added to this suspicion. *Morgan*, 729 F.3d at 1090 (finding that "furtive gestures" by occupant of vehicle can be an appropriate basis for reasonable suspicion of criminal activity). Officers Decker and Forck recount how, as they approached on their motorcycles, Williams moved around in the vehicle with his hands concealed from their view. Williams agrees that he opened and closed the driver's side front door of the vehicle in order to spit as the officers drove toward him. Although this act turned out to be

-5-

innocent, it was not unreasonable for the officers to interpret Williams's movements as suspicious in light of how the vehicle was parked and Officer Forck's observation of what he believed to be alcohol consumption in the vehicle. *See Carpenter*, 462 F.3d at 986 ("The behavior on which reasonable suspicion is grounded . . . need not establish that the suspect is probably guilty of a crime or eliminate innocent interpretations of the circumstances."). Taken together, these particularized facts, along with the reasonable inferences drawn therefrom, are sufficient to generate reasonable suspicion of illegal activity.

Williams and Porter insist that genuine disputes of fact preclude us from reaching this conclusion. Although Officer Forck reported that he witnessed Williams drink from a container wrapped in a paper bag—which Officer Forck believed to contain alcohol—both Williams and Porter testified to the contrary. Williams averred that his container of beer, which was unopened when the officers arrived, was in the backseat of the vehicle. Porter testified that Williams's hand was on his container of beer, which was located beside him, and that Williams was getting ready to open it. Consequently, for purposes of summary judgment, we must assume that Officer Forck was mistaken in fact when he observed Williams drinking from a container wrapped in a paper bag. However, reasonable suspicion of criminal activity can be based upon a mistake of fact so long as that mistake was objectively reasonable. *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005); *see also McKenney v. Harrison*, 635 F.3d 354, 358-59 (8th Cir. 2011) (explaining that an officer does not lose his entitlement to qualified immunity by acting upon an objectively reasonable mistake of fact). It is undisputed that alcohol was being consumed in close proximity to Williams from a container wrapped in a paper bag—in precisely the manner described by Officer Forck. It also is undisputed that the vehicle was parked at an angle across two parking spaces. Under these circumstances, Officer Forck's mistaken perception that the driver, rather than the passenger, in a double-parked vehicle was consuming alcohol was objectively reasonable. *See United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008) (finding

mistake of fact to be objectively reasonable based upon difficulty of discerning visually whether a traffic infraction occurred); *cf. McKenney*, 635 F.3d at 359 (finding mistake of fact to be objectively reasonable where undisputed facts supported officers' mistaken belief).

Williams and Porter next assert that the officers exceeded the scope of *Terry* by drawing their weapons, applying handcuffs, and performing a protective sweep of the interior of the vehicle. "It is well established . . . that when officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004); *see United States v. Walker*, 555 F.3d 716, 721 (8th Cir. 2009) (concluding that "removal of [the driver] and the passenger from the vehicle and the use of handcuffs by the police were part of a protective search"). In addition, "[a]fter securing a suspect, officers may also conduct a protective sweep of the vehicle's passenger compartment to search for dangerous weapons that the suspect or other occupants might later access." *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011); *see United States v. Plummer*, 409 F.3d 906, 908-09 (8th Cir. 2005). In discerning whether these actions met the Fourth Amendment's standard of reasonableness, "the issue is whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." *Smith*, 645 F.3d at 1003.

An objectively reasonable concern for officer safety or suspicion of danger existed here. Rather than raise his hands as the officers instructed, Officer Decker saw Williams lean forward while keeping his hands concealed. Officer Forck, from his perspective, witnessed Williams hide his hands from the officers' view. These circumstances are sufficient to create an objectively reasonable concern for officer safety or suspicion of danger. *See United States v. Martinez-Cortes*, 566 F.3d 767, 771 (8th Cir. 2009) (concluding that occupants' failure to comply promptly with police orders and furtive movements by driver gave officers "reason to

suspect . . . that the occupants might be a risk to officer safety unless detained"); *Morgan*, 729 F.3d at 1090 (reasoning that "furtive gestures" by the driver of vehicle supported a "reasonable belief that [the driver] was dangerous"). Williams and Porter's perspective of this sequence of events differs from the officers', but the parties' accounts of these events are not inconsistent. While Williams did not hear the officers' commands, he admits that he heard them say something. Porter likewise testified that he could not understand what the officers were saying when he first saw them. This testimony corroborates the officers' statements that Williams failed to raise his hands promptly. Moreover, Williams saw the officers draw their weapons immediately after he reached to adjust the volume of the music—testimony that is consistent with the officers' observation that Williams leaned forward and hid his hands from their view. Even though Williams and Porter's account of these events indicates that the officers were not at an actual risk of harm, the *Terry* inquiry focuses on whether a concern for officer safety or suspicion of danger is objectively reasonable, not on whether such a risk or suspicion existed with the benefit of hindsight. *See Plummer*, 409 F.3d at 909; *Smith*, 645 F.3d at 1002-03. Because this objective test is met here, the officers permissibly drew their weapons, handcuffed Williams and Porter, and performed a protective sweep of the vehicle. *See id.*[2]

---

[2]Williams and Porter assert that the officers exceeded the scope of a protective sweep by searching the trunk of the vehicle. But Williams and Porter did not raise this argument before the district until their motion to alter or amend the district court's judgment. *See* Fed. R. Civ. P. 59(e). Arguments not made to the district court until a Rule 59(e) motion that the district court declines to address are waived. *See McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005); *see also United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 934 (8th Cir. 2006) ("This court has consistently held that Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to the entry of judgment."). For this same reason, Williams and Porter also waived their argument that the district court erred by dismissing their claim based upon the officers' requirement that Porter pour out the containers of beer.

Williams and Porter also contend that the officers exceeded the scope of a *Terry* stop by detaining them for an unreasonable amount of time. "A detention may become a *de facto* arrest if it lasts for an unreasonably long time, but there is no rigid time limit on an investigatory detention." *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005). In determining whether an investigatory detention is reasonable, we consider "the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). We also ask "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Id.* at 686. The officers' actions here were not dilatory. They removed Williams and Porter from the vehicle, handcuffed them, and inquired into whether there were any weapons in the vehicle. After Williams replied in the affirmative, Officer Forck removed the weapon from the glove compartment and unloaded it. The officers also performed a protective sweep of the vehicle, questioned Williams and Porter about what they were doing in the park, and ascertained their criminal histories. *See United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998) (per curiam) (finding criminal history search to be permissible under *Terry*); *Martinez-Cortes*, 566 F.3d at 771 (same). The officers, according to Porter, completed these tasks in approximately thirty minutes, at which time the officers released Porter. Taking roughly thirty minutes to accomplish this investigation did not run afoul of the Fourth Amendment. *See, e.g.*, *Sharpe*, 470 U.S. at 679, 683 (concluding that twenty-minute detention to investigate the officers' suspicion that camper contained drugs "clearly" met the Fourth Amendment's reasonableness standard); *Tuley*, 161 F.3d at 515 (concluding that twenty-minute detention to investigate officer's suspicion, which included time spent checking the defendant's criminal history and verifying an outstanding warrant, was reasonable); *Payne*, 534 F.3d at 951-52 (concluding that thirty-nine-minute detention was not unreasonable even though officer was mistaken in fact about whether a traffic infraction had occurred); *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005) (concluding that forty-five-minute detention, which included time spent verifying

-9-

occupant's identification, was reasonable); *see also Maltais*, 403 F.3d at 557 (finding detention of nearly three hours reasonable under the circumstances).

Williams further argues that his detention for an additional thirty minutes after the officers released Porter violated the Fourth Amendment. The officers assert in response that *Terry* permitted Williams's continued detention because they were investigating a firearms offense. It is true that officers may expand the scope of a *Terry* stop to investigate additional reasonable suspicion that arises, *see United States v. Banks*, 553 F.3d 1101, 1105 (8th Cir. 2009), but that is not what happened here. Instead, Officer Forck advised Williams that he was under arrest, and the officers requested a transport unit to take Williams to the police station for booking. Officer Decker remained on the scene with Williams to wait for the transport unit to arrive, and Officers Forck and Stephens returned to the police station. Officer Forck left the scene to verify Williams's criminal history, and Officer Stephens returned to the police station to prepare an arrest sheet to facilitate the booking process. Under these circumstances, the *Terry* stop of Williams became an arrest. *See United States v. Dixon*, 51 F.3d 1376, 1380 (8th Cir. 1995) ("In distinguishing between a[n] [investigative] stop and an arrest, we consider the length of the detention and the conduct of the law enforcement officers.").

"[A] *Terry* stop that becomes an arrest must be supported by probable cause." *United States v. Aquino*, 674 F.3d 918, 924 (8th Cir. 2012). Probable cause to arrest exists if "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (alteration in original) (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)). Law enforcement officers are "entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'" *Id.* (quoting *Borgman*, 646 F.3d at 522-23). In other words, the defense of qualified immunity applies if officers "arrest a suspect under the mistaken belief that they have probable cause to

do so—provided that the mistake is objectively reasonable." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000).

The officers arrested Williams based upon information from a police dispatcher, which Officer Forck confirmed twice with the dispatcher, that Williams had a previous felony conviction and verification from a police sergeant that this criminal history made it illegal for Williams to possess a firearm. *See* Mo. Rev. Stat. § 571.070.1(1) (describing the crime of unlawful possession of a firearm by a person with a previous felony conviction). This was sufficient to amount to "arguable probable cause" to arrest Williams. *See Joseph*, 712 F.3d at 1228 ("The law does not require law enforcement officers to conduct a perfect investigation to avoid suit for false arrest."). The fact that Williams had not been convicted of a felony, as he told the officers at the scene, does not alter the officers' entitlement to qualified immunity. *See Borgman*, 646 F.3d at 523 ("When an officer is faced with conflicting information that cannot be immediately resolved . . . he may have arguable probable cause to arrest a suspect."). It was objectively reasonable for the officers to rely upon Williams's criminal history as reported and confirmed to them by a police dispatcher. *See, e.g.*, *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (considering mistake of fact about the subject of a warrant and relying on the facts that "[w]hen [the officer] made the initial arrest, his car computer showed that there was a warrant for [the arrestee], and [a police communications operator] had verified this information over the radio" to conclude that the officer "had an objectively reasonable basis for making the arrest"); *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) ("Whether or not the officers were given faulty (inaccurate) information . . . is immaterial to the case because police officers are entitled to rely on the reasonable information relayed to them from a police dispatcher."). The officers, then, are entitled to qualified immunity for the arrest of Williams.

For the reasons described above, we affirm the grant of qualified immunity to the officers on Williams and Porter's Fourth Amendment claims.

## B. Senior Judge

Williams and Porter also advance the novel argument that the district court judge lacked authority to adjudicate this matter due to her status as a senior district court judge. This contention is without merit. "Senior judges are fully commissioned Article III judges, and the Supreme Court has expressly held that upon assuming senior status, a senior judge 'does not surrender his commission, but continues to act under it.'" *Bank v. Cooper, Paroff, Cooper & Cook*, 356 F. App'x 509, 511 (2d Cir. 2009) (summary order) (quoting *Booth v. United States*, 291 U.S. 339, 350-51 (1934)), *cert. denied*, 131 S. Ct. 93 (2010); *see also Nguyen v. United States*, 539 U.S. 69, 72 (2003) (stating that a senior circuit judge is "of course, [a] life-tenured Article III judge[]"); 28 U.S.C. § 371(b)(1) ("Any justice or judge of the United States appointed to hold office during good behavior may retain the office but retire from regular active service . . . .").

## III. Conclusion

For the reasons described above, we affirm.[3]

---

[3]The district court also granted summary judgment to the officers on the basis of qualified immunity on Williams and Porter's excessive-force claim and their equal-protection claim, which was based upon the fact that Williams and Porter are both African-Americans. However, due to Williams and Porter's failure to include any meaningful argument regarding these claims in their briefing on appeal, these claims are abandoned. *See Griffith v. City of Des Moines*, 387 F.3d 733, 739 (8th Cir. 2004).

-12-