Filed 2/11/15  P. v. Yang CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>NENG VANG YANG,<br><br>        Defendant and Respondent. | A141340<br><br>(Humboldt County<br>Super. Ct. No. CR1300493) |

Defendant Neng Vang Yang was charged with possessing marijuana for sale after police officers found large quantities of the drug while responding to a shooting inside his home.  (Health & Saf. Code, § 11359.)  The trial court granted defendant's motion to suppress the evidence discovered during the search (Pen. Code, § 1538.5), and dismissed the case in the interest of justice after the People indicated they would be unable to proceed.  The People appeal (Pen. Code, § 1238, subd. (a)(7)), arguing the marijuana was discovered during a lawful protective sweep of the premises.  (*Maryland v. Buie* (1990) 494 U.S. 325 (*Buie*).)  We agree and reverse.

## I.  FACTS AND PROCEDURAL HISTORY[1]

At about 9:30 p.m. on November 23, 2012, Eureka Police Department officers were dispatched to a single-family, two-story house on Progress Street after a shooting at that location was reported.  For safety reasons, they ordered everyone in the house to

---

[1]  The facts are taken from the hearing on the motion to suppress.

1

come outside.  About six to eight people complied, all of whom appeared to be members of the same family.  Defendant was one of the people in the group and lived in the house.

One of the men who came out of the house was handcuffed and taken into custody after being identified as the shooter.  The people outside the house told police the shooting victim was the only person still inside.  Officers entered the house and found the victim in the kitchen, bleeding from a gunshot wound to his leg.  They performed a protective sweep to see whether any other suspects or victims were inside.  The purpose of the sweep was to "clear" the residence and make sure it was safe for medical personnel and others to enter without fear of being attacked.

Officer Stelzig covered the bottom floor during the sweep, while Officer Cooper went upstairs, checking rooms and looking anywhere he thought a person might be.  Cooper entered one of the upstairs rooms and saw a large triple beam scale of the type used for weighing larger packages of marijuana.  He also smelled an "overpowering odor" of marijuana.

Cooper noticed what appeared to be a closet door inside the room that smelled of marijuana (he did not recall whether it was open or closed) and looked inside.  He saw what he described as a large "attic" or "crawl space," though it was on the same level as the second flood itself, rather than overhead.  Inside the room were a "couple of rifle cases and several tubs and just areas where people could hide."  Cooper asked for more officers to come upstairs to help him clear the space.  When more officers arrived, they entered the space and determined the rifle cases were empty.  They saw large amounts of processed marijuana inside the tubs, some of which were see-through.  The attic smelled of marijuana.

Stelzig advised defendant they had found marijuana upstairs and one of the detectives would be "writing a search warrant" unless he gave consent to search the home. Defendant signed a written consent form and the officers seized the marijuana.[2]

Defendant was charged with possessing marijuana for sale in violation of Health and Safety Code section 11359. He filed a pretrial motion to suppress evidence of the marijuana seized at his home. The People opposed the motion, arguing the marijuana was discovered in plain view during a lawful protective sweep of the premises under *Buie*, *supra*, 494 U.S. 325. The court granted the motion to suppress in a written order stating: "There were no articulable facts to support the search of the attic area on the second floor, which exceeded the limited intrusion permitted by [*Buie*]. (See also *United States v. Akrawi* (1990) 920 F.2d 418 [(*Akrawi*)].) It is of import that upon entering the bedroom the officer smelled the overpowering odor of marijuana, saw a triple beam scale, and searched the attic area in the bedroom and located the marijuana. The search here went beyond a cursory protective sweep."

## II. STANDARD OF REVIEW

Our standard of review in an appeal challenging an order on a motion to suppress is well established. "We defer to the trial court's factual findings where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under the Fourth Amendment standards of reasonableness. [Citation.]" (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1073-1074.)

## III. DISCUSSION

Although the warrantless entry of a residence is presumptively unreasonable under the Fourth Amendment of the United States Constitution, " 'police may enter a home without a warrant when they have an objectively reasonable basis for believing that an

---

[2] Although the evidence at the preliminary hearing showed the defendant and his wife had medical marijuana cards, in the opinion of a qualified expert, the marijuana seized was worth more than $10,000 and exceeded the amount of medical marijuana that would be used by two individuals.

3

occupant is seriously injured or imminently threatened with such injury.' " (*People v. Troyer* (2011) 51 Cal.4th 599, 605 (*Troyer*) [officer responding to a reported shooting who found gunshot victim on porch was entitled to enter home to locate possible additional victims inside]; see *Brigham City, Utah v. Stuart* (2006) 547 U.S. 398, 403 [officers entitled to enter home after they responded to complaints about a loud party and, through a window, observed an assault].) Here, the police had an objectively reasonable basis for believing a shooting victim was inside defendant's home, and they were justified in entering to render assistance and determine whether anyone else had been hurt. (See *Troyer*, *supra*, 51 Cal.4th at pp. 607-609; *Tamborino v. Superior Court* (1986) 41 Cal.3d 919, 924-925 [police officer's discovery of wounded person upon his forced entry into an apartment where a robbery had been reported supplied reasonable cause to reenter apartment and conduct search for additional victims after wounded person was detained outside apartment].)

Defendant does not challenge the officers' entry into the home, but takes the position that once they found the shooting victim on the first floor, they had no reason to go upstairs and into the attic where the marijuana was discovered. The People argue because the officers were justified in entering defendant's home to render aid to the shooting victim, they were entitled to search the upstairs for additional victims and conduct a protective sweep of the entire premises to ensure their safety and that of the emergency personnel who needed to enter the home to treat the known victim. We agree with the People.

In assessing the reasonableness of a search under the Fourth Amendment, "courts have regularly considered the safety risks confronting investigating officers." (*People v. Wilson* (1997) 59 Cal.App.4th 1053, 1060.) Within certain parameters, police may conduct a protective sweep of the premises when necessary to protect the safety of police officers and others. (*Buie*, *supra*, 494 U.S. at p. 327; *People v. Ledesma* (2003) 106 Cal.App.4th 857, 863 (*Ledesma*).) In *Buie*, the court explained the proper scope of a protective sweep in connection with an in-home arrest pursuant to a warrant: "[A]s an incident to the arrest the officers could, as a precautionary matter and without probable

cause or reasonable suspicion, look in closets or other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.  Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." (*Buie*, *supra*, 494 U.S. at p. 334.)

Although *Buie* involved a protective sweep in the context of an in-home arrest, subsequent case law has extended its holding to other situations.  (See *Ledesma*, *supra*, 106 Cal.App.4th at p. 864 [protective sweep in anticipation of probation search]; *United States v. Taylor* (6th Cir. 2001) 248 F.3d 506, 513 [officer left to secure premises while search warrant is obtained may conduct protective sweep]; *Drohan v. Vaughn* (1st Cir. 1999) 176 F.3d 17, 22 [officers executing search warrant may conduct protective sweep]; *United States v. Patrick* (D.C. Cir. 1992) 959 F.2d 991, 996-997, abrogated on other grounds in *Apprendi v. New Jersey* (2000) 530 U.S. 466, as stated in *United States v. Starnes* (7th Cir. 2013) 741 F.3d 804, 810 [officers who entered an apartment with tenant's consent properly performed protective sweep of bedroom]; *Earle v. United States* (D.C. 1992) 612 A.2d 1258, 1264 [officers who entered home to investigate reported gunshots based on emergency exception to the warrant rule were entitled to perform protective sweep]; *People v. Werner* (2012) 207 Cal.App.4th 1195, 1206 [recognizing protective sweep may occur in connection with a detention or an arrest outside the premises to be swept].)  Properly distilled, these cases stand for the proposition that when police have lawful cause to enter a residence, they may conduct a protective sweep when the criteria of *Buie* have been met.[3]

---

[3] Some federal courts have limited *Buie* to sweeps conducted in connection with a lawful arrest inside a home.  (See *United States v. Hassock* (2d Cir. 2011) 631 F.3d 79, 86-87; *People v. Celis* (2004) 33 Cal.4th 667, 678 (*Celis*).)  Given the underlying purpose of a protective sweep—to prevent violence against officers acting in the lawful conduct of their duties—we conclude *Buie* is not so limited.  (See *Ledesma*, *supra*, 106 Cal.App.4th at pp. 862-868.)

A protective sweep "can be justified by a standard lower than probable cause, namely, reasonable suspicion." (*Celis*, *supra*, 33 Cal.4th at p. 680 [assuming *Buie* applied to detention outside a home, officers did not have reasonable suspicion to do a sweep of home when defendant was detained outside and officers had no information anyone was currently inside]; see *Buie*, *supra*, 494 U.S. at p. 327.) This standard "strikes the proper balance between officer safety and citizen privacy." (*Buie*, at p. 334, fn. 2.) In determining the existence of reasonable suspicion, courts must evaluate the " ' "totality of the circumstances" ' on a case-by-case basis to see whether the officer has ' "a particularized and objective basis" ' for his or her suspicion. [Citation.]" (*Ledesma*, *supra*, 106 Cal.App.4th at p. 863.) "Among the circumstances that are appropriately taken into account in evaluating a protective sweep are the type and location of the police action contemplated following the sweep." (*Ibid*.)

Applying these principles to the case before us, it was objectively reasonable for officers to conduct a protective sweep of the upstairs of defendant's home. Police officers were dispatched to the home to investigate a shooting. Several people, apparently related to one another, left the house when ordered by the police and confirmed the shooting had occurred. The suspected shooter was among that group and was identified and arrested, but the victim remained inside the home and was in need of medical attention for his gunshot wound. The officers did not have the option of leaving the home once the suspect was in custody outside. They needed to remain inside to attend to the victim and were entitled to conduct a protective sweep to ensure their own safety and that of the emergency medical personnel who would treat the victim.

Given the violent nature of the attack that had just occurred, officers were well advised to ensure no one else remained inside before allowing emergency personnel to enter the home. Although the family members outside told them there was only one victim and only one shooter, they were faced with a fluid and dangerous situation and were not required to accept this information at face value. (See *Troyer*, *supra*, 51 Cal.4th at p. 608.) A person with a weapon hiding upstairs was potentially as dangerous as one hiding on the first floor of the home, closer to the victim. It was reasonable for the

officers to sweep the premises—downstairs and upstairs—and briefly look into those areas "where a person may be found." (*Buie*, *supra*, 494 U.S. at p. 335.) The attic space in which the marijuana was discovered was an unfinished room on the same level as the upstairs rooms, accessible through a doorway in one of those rooms. Because a person could have been found in that space, it was reasonable for the officers to enter it, and they were entitled to later seize the marijuana found in plain view. (*People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1014-1016.)

The order granting the motion to suppress indicates the trial court found it of "import" that upon entering the bedroom, Officer Cooper smelled marijuana and saw a triple beam scale. This suggests the court was focused on the officer's subjective reason for entering the attic, rather than the objective circumstances. We consider the objective reasonableness of the protective sweep, not the officer's subjective intent, in determining its legality under the Fourth Amendment. (*United States v. Plummer* (2005) 409 F.3d 906, 909; see *Michigan v. Fisher* (2009) 558 U.S. 45, 47; *Whren v. United States* (1996) 517 U.S. 806, 813.)

Our analysis is not altered by *Akrawi*, *supra*, 920 F.2d 418, cited in the trial court's order. In *Akrawi*, federal agents executed an arrest warrant for a suspected cocaine distributor at a home where both he and the defendant (Akrawi) were present. (*Id*. at pp. 418-419.) Although the subject of the warrant was immediately arrested downstairs when he answered the door, and although no search warrant accompanied the arrest warrant, the agents "inexplicably" remained in the home for 45 minutes, at some point searching all the rooms upstairs. (*Id*. at p. 419.) Akrawi was charged with possessing a firearm found during the search, which police sought to justify as a protective sweep. (*Id*. at pp. 419-420.) The Court of Appeals concluded his motion to suppress the evidence should have been granted because (1) police had stated no basis for believing dangerous individuals were present on the second floor, and (2) there was no causal relation between the sweep and the claim the agents needed to protect themselves when the record did not show at what point during their 45-minute stay the agents conducted the sweep. (*Id*. at pp. 420-421.)

In the case before us, police officers were responding to a confirmed shooting inside the defendant's home rather than executing an arrest warrant at a house where there was no evidence of recent violent criminal activity. The recent shooting made it reasonable to sweep the upstairs looking for additional suspects or armed individuals who might pose a threat to the officers and emergency personnel who needed to enter the home. Moreover, the sweep in this case was conducted immediately upon the officers' lawful entry into the home for the purpose of rendering aid to a gunshot victim. In *Akrawi*, the prosecution failed to establish when the sweep occurred: "[W]e will not presume that the sweep was short and that it occurred immediately after [the arrest]. If the agents were concerned about safety, it seems unlikely they would have lingered in the house for forty-five minutes after confronting [the arrestee] at the front door with no resistance." The facts of *Akrawi* are inapposite and do not support the trial court's ruling in this case.

## DISPOSITION

The orders dismissing the information and granting defendant's motion to suppress under Penal Code section 1538.5 are reversed and the matter is remanded to the trial court.

8

_____

                                    NEEDHAM, J.


We concur.


_____

SIMONS, Act. P. J.


_____

BRUINIERS, J.