# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2210
_____

United States of America

*Plaintiff - Appellee*

v.

Gary Dale Elliott, Sr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: January 12, 2023
Filed: June 1, 2023
[Unpublished]
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

PER CURIAM.

Gary Elliott, Sr., challenges the district court's[1] refusal to suppress incriminating evidence, including flash drives containing child pornography and a firearm. We affirm.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

## I.

Elliott came to the attention of law enforcement when his girlfriend and another woman reported that he collected child pornography. Once Elliott learned what they did, the situation became dangerous. Armed with a pistol, he tracked them down to an apartment building and parked outside. During a 911 call, one of the women gave the police his location, described his red Dodge Avenger, and explained why they were afraid of him.

The information she provided was spot on. When the officers arrived, Elliott was sitting outside in a red Avenger. They placed him in handcuffs after he willingly stepped out. Although he initially denied having a gun, the officers did not take his word for it. They asked for consent to search the car, to which he responded, "yeah," while admitting that he "might have a pot pipe in there or something."

The search turned up two items: a loaded .38 revolver and a marijuana pipe. Officers arrested Elliott because, as a convicted felon, he could not possess a gun. Once he was in custody, everyone's attention turned to the flash drives that Elliott's girlfriend had provided to the police. A search warrant allowed a detective to confirm that they contained child pornography. And a second warrant for his electronic devices uncovered more of the same.

Elliott moved to suppress everything. The district court ruled against him, so he decided to plead guilty while reserving the right to appeal the suppression issues raised in his motion and the 660-month sentence he received. We apply de novo review to any legal conclusions and will only overturn factual findings if they are clearly erroneous. *See United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015).

## II.

Elliott first takes issue with how the encounter started: a stop and frisk outside the apartment building. To conduct an investigatory stop, officers must have "reasonable suspicion supported by articulable facts that criminal activity" could "be afoot." *United States v. Morgan*, 729 F.3d 1086, 1089 (8th Cir. 2013) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Only then will the stop be "reasonable" under the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968).

We have little doubt that the officers had reasonable suspicion here. They came to the scene based on the report of a *non*-anonymous caller who knew Elliott and provided specific details. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (explaining that tips are more reliable when they are not anonymous). Among other things, she said that he had a gun, that she and another woman had turned him in for possessing child pornography, and that he was currently sitting outside in a red Dodge Avenger. Officers then corroborated some of those details before the stop. *See Alabama v. White*, 496 U.S. 325, 331 (1990) (discussing the significance of corroboration).

The officers did not overstep just because they placed him in handcuffs. After all, we have long allowed their use when necessary "to protect [officer] safety and maintain the status quo" during an investigatory stop. *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011). Nor was the stop unreasonably extended while the officers searched his car, which lasted less than five minutes. *See Williams v. Decker*, 767 F.3d 734, 741–42 (8th Cir. 2014) (allowing officers to hold a suspect for "thirty minutes" during a similar search).

## III.

Elliott also challenges what the officers said to him. In his view, the encounter crossed the line into a custodial interrogation, even though he never received a

*Miranda* warning. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The problem for him, however, is that the statements, including the one about the "pot pipe," did not need to be suppressed even if he was in custody at the time. *See United States v. Becerra*, 958 F.3d 725, 729 (8th Cir. 2020).

First, asking him about the potential presence of harmful items like "drugs, guns, knives, or bombs" fell into the public-safety exception. The Supreme Court has recognized that officers can ask questions "reasonably prompted by a [safety] concern," *New York v. Quarles*, 467 U.S. 649, 656 (1984), "without the formality of *Miranda* warnings," *Becerra*, 958 F.3d at 730. The classic example is what they did here: ask a suspect about weapons and anything else that might pose a danger. *See, e.g.*, *United States v. Liddell*, 517 F.3d 1007, 1009–10 (8th Cir. 2008).

Second, the request to search his car did not require *Miranda* warnings either. *See United States v. Tapia-Rodriguez*, 968 F.3d 891, 895 (8th Cir. 2020). "We have never held that a request to search must be preceded by *Miranda* warnings, or that a lack of *Miranda* warnings invalidates a consent to search." *United States v. Payne*, 119 F.3d 637, 643 (8th Cir. 1997).

IV.

Nor was there anything wrong with the search warrants. They required probable cause: "a fair probability that contraband or evidence of a crime w[ould] be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see* U.S. Const. amend. IV.

Here, probable cause was present. For the first warrant, Elliott's girlfriend had already informed the police that the flash drives contained child pornography and Elliott had watched it. *See United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021) (holding that there was "probable cause" when a third party "identified himself to police, and . . . delivered the USB to police in person"). And for the second one, a detective had already found child pornography on the flash drives. *See*

-4-

*United States v. Alexander*, 574 F.3d 484, 491 (8th Cir. 2009). In circumstances like these, finding illegal material on one set of electronic devices can create a "fair probability" of finding it on others.[2] *Id.* at 489, 491 (citation omitted).

V.

Finally, Elliott's 660-month sentence, while lengthy, is substantively reasonable. The district court reached that total by imposing consecutive sentences for the child-pornography and felon-in-possession counts.[3] In doing so, it sufficiently considered the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), and did not rely on an improper factor or commit a clear error of judgment, *see United States v. Feemster*, 572 F.3d 455, 461–62 (8th Cir. 2009) (en banc). We cannot say it abused its discretion, even if Elliott had hoped to receive a shorter sentence. *See United States v. McDaniels*, 19 F.4th 1065, 1067 (8th Cir. 2021) (per curiam).

VI.

We accordingly affirm the judgment of the district court.

———————————————

---

[2]The fact that the warrant applications did not include the criminal histories of either woman does not change our analysis. *See Franks v. Delaware*, 438 U.S. 154 (1978); *Hartman v. Bowles*, 39 F.4th 544, 546 (8th Cir. 2022) (per curiam) (requiring an omission in a warrant application to be "[i]ntentional[] or reckless[]").

[3]Elliott received 360 months for producing child pornography, *see* 18 U.S.C. § 2251(a), (e); 240 months for receiving it, *see id.* § 2252A(a)(2), (b)(1); and 60 months for the felon-in-possession count, *see id.* §§ 922(g)(1), 924(a)(2).