# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-4043

_____

United States of America,

*Plaintiff - Appellant,*

v.

Shawn K. Morgan,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 11, 2013
Filed: September 10, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A grand jury indicted Shawn K. Morgan for possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Morgan moved to suppress evidence that was seized from his person and his vehicle, and statements he made after law enforcement officers read Morgan his

*Miranda* rights. The district court granted the motion, and the government appeals. We reverse the district court's order, and remand for further proceedings.

## I.

At approximately 12:45 a.m. on April 17, 2012, Officers Aram Normandin and Josh Downs of the Omaha Police Department were patrolling 24-hour businesses in response to robberies in the area. In their patrol car, the officers observed a vehicle with tinted windows parked at the far corner of a grocery store parking lot. Normandin testified that the occupants of the vehicle were "ducked down," so he and Downs "decided to get out and see what was going on." As the officers approached the vehicle, the person in the driver's seat sat up and reached under his seat with both hands.

Normandin and Downs pointed their service weapons at the occupants of the parked vehicle and ordered them to show their hands. The driver, Morgan, initially kept his hands under his seat, but he complied with a second command to raise his hands. The officers then removed Morgan and the other two occupants from the vehicle. By that time, two more police officers had arrived at the scene.

The officers handcuffed all three occupants and seated them on a curb away from the car. Normandin testified that he was concerned that there was a weapon under Morgan's seat, so he immediately searched the vehicle. When he reached under the driver's seat of the vehicle, Normandin felt a lockbox that was large enough to conceal a handgun. Normandin said that he removed the lockbox from the car and asked Morgan, "What is this?" Morgan replied, "There's meth in there, and I'm a dealer."

Based on this response, the officers advised Morgan of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Normandin opened the lockbox and found

methamphetamine and a container with a white powdery substance. Morgan then told the officers that he was a drug dealer from Fremont, Nebraska, and that the methamphetamine in the lockbox was for a drug deal in Omaha. When Normandin asked Morgan what was the white powdery substance, Morgan replied that it was cocaine. After the substances in the lockbox field-tested positive for methamphetamine and cocaine, Normandin arrested Morgan. In addition to the drugs, the officers retrieved $1780 in cash.

The district court suppressed the physical evidence and Morgan's postwarning statements to law enforcement. The court concluded that the officers exceeded the permissible scope of an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968), and that Morgan's unlawful arrest led directly to the seizure of the physical evidence and the making of the inculpatory statements. The government appeals. We consider the question of reasonable suspicion *de novo* and review findings of fact for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

II.

A.

A law enforcement officer may detain a person for investigation without probable cause to arrest when the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). Once reasonable suspicion is established, law enforcement officers may conduct a protective search of a vehicle's interior, whether or not the occupants have been removed from the vehicle, because "if the suspect is not placed under arrest, he will

be permitted to reenter his automobile, and he will then have access to any weapons inside." *Michigan v. Long*, 463 U.S. 1032, 1052 (1983). While *Arizona v. Gant*, 556 U.S. 332 (2009), clarified the limits of an officer's authority to search a vehicle incident to arrest after the arrestee has been secured, *Gant* expressly recognized the continuing vitality of *Michigan v. Long*, and identified protective searches of a vehicle based on reasonable suspicion of dangerousness as an "established exception to the warrant requirement." *Id*. at 346.

The officers had reasonable suspicion to detain Morgan under *Terry*. While patrolling a 24-hour grocery store in an area where there had been recent robberies of 24-hour businesses, the officers observed a vehicle with tinted windows that was parked far away from the store entrance. It was late at night, and they noticed that the occupants of the vehicle were attempting to conceal themselves. As Normandin approached the vehicle, Morgan made furtive gestures under his seat with both hands. And Morgan refused to remove his hands from under the seat when Normandin first ordered him to do so. Taken together, these factors amount to reasonable suspicion that Morgan was engaged in criminal activity, and a reasonable belief that Morgan was dangerous. *See United States v. Martinez-Cortes*, 566 F.3d 767, 771 (8th Cir. 2009) (where occupants of vehicle did not promptly comply with police command to show their hands, and driver moved his arms as if to hide something, "[t]hese furtive actions gave the officers reason to suspect . . . that criminal activity was afoot, and that the occupants might be a risk to officer safety unless detained . . . .").

The principle announced in *Terry* has been extended to include vehicle searches. *Long*, 463 U.S. at 1049. Morgan's furtive gestures under his seat as the officers approached the vehicle gave them reason to believe that there was a weapon in the vehicle that Morgan might access when the *Terry* stop ended and he was permitted to return to the vehicle. This objectively reasonable concern for officer safety justified Normandin's immediate protective sweep under the driver's seat of the vehicle. *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011). Because

-4-

reasonable suspicion was established, the officers' search of the vehicle's interior was permitted even though the occupants had been removed from the vehicle. *Long*, 463 U.S. at 1052. Normandin also was authorized to search the lockbox he found in the vehicle, which was large enough to conceal a weapon, because a valid search under *Long* extends to closed containers found in the vehicle's passenger compartment. *Id.* at 1049; *see United States v. Shranklen*, 315 F.3d 959, 962-63 (8th Cir. 2003).

## B.

The scope of a *Terry* stop is limited, and an investigatory detention "may turn into an arrest if it lasts for an unreasonably long time or if officers use unreasonable force." *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007) (internal quotation omitted). In determining whether a detention is too long to be justified as a *Terry* stop, we consider whether the officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). There is no bright line rule; instead, "common sense and ordinary human experience must govern over rigid criteria." *Id.* at 685; *see United States v. Place*, 462 U.S. 696, 709 (1983).

While officers should employ the least intrusive means reasonably available to verify or dispel their suspicions, *see Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion), they may take any additional steps that are "reasonably necessary to protect their personal safety . . . during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). Police officers reasonably may handcuff a suspect during the course of a *Terry* stop to protect their personal safety. *Smith*, 645 F.3d at 1002-03; *United States v. Navarrete-Barron*, 192 F.3d 786, 791 (8th Cir. 1999).

In the circumstances of this case, the limits of a *Terry* stop were not exceeded when Morgan was removed from the vehicle and handcuffed, and Normandin conducted a protective sweep of the vehicle. The officers had established reasonable suspicion and had reason to believe that Morgan was dangerous, and Normandin searched the vehicle for weapons immediately after securing Morgan. The officers did not use unreasonable force and did not hold Morgan for an unreasonably long time.

A *Terry* stop involves a police investigation "at close range," *Terry*, 392 U.S. at 24, and it is reasonable for officers to fear for their safety—even when a suspect is secured—because the suspect will be permitted to return to his vehicle and to access any weapons inside at the end of the investigation. *Long*, 463 U.S. at 1051-52. The officers were "acting in a swiftly developing situation," *Sharpe*, 470 U.S. at 686, and were authorized to take reasonable steps to protect their safety during and immediately after the *Terry* stop. *Hensley*, 469 U.S. at 235.

III.

The next question on appeal is whether the physical evidence and Morgan's statements later in the encounter—that he was a drug dealer in Fremont, Nebraska, that the methamphetamine was for a drug deal in Omaha, and that the white substance was cocaine—are admissible. The district court concluded that the physical evidence and statements were obtained as a result of an unlawful arrest in violation of the Fourth Amendment, and thus were inadmissible fruits of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471 (1963). As explained, however, we disagree that there was an unlawful arrest, so the district court's rationale does not justify suppression of the evidence and statements.

The government does not challenge the district court's suppression of the statement Morgan made *before* the officers advised him of his *Miranda* rights—*i.e.*,

-6-

that there was methamphetamine in the lockbox and that Morgan was a dealer. The question then arises whether the physical evidence and later statements must be suppressed as the fruits of a conceded *Miranda* violation.

In *United States v. Patane*, 542 U.S. 630 (2004), the Supreme Court ruled that a violation of the *Miranda* rule does not justify the suppression of physical evidence that is the fruit of custodial interrogation conducted without *Miranda* warnings. *Id.* at 642-44 (plurality opinion); *id.* at 644-45 (Kennedy, J., concurring in the judgment). Therefore, the methamphetamine and cocaine Normandin found in the lockbox, and the $1780 in cash the officers retrieved, should not be suppressed.

Warned statements elicited after an initial *Miranda* violation may be admissible, so long as officers do not purposefully elicit an unwarned confession from a suspect in an effort to circumvent *Miranda* requirements. *Missouri v. Seibert*, 542 U.S. 600, 604 (2004) (plurality opinion); *id.* at 622 (Kennedy, J., concurring in the judgment); *United States v. Torres-Lona*, 491 F.3d 750, 757-58 (8th Cir. 2007) (treating Justice Kennedy's concurrence as "controlling"). When officers have made no such calculated effort to elicit a confession, *Seibert* is not implicated, and the admissibility of postwarning statements is governed by the principles of *Oregon v. Elstad*, 470 U.S. 298 (1985). *See Torres-Lona*, 491 F.3d at 758; *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in the judgment). Here, Morgan does not argue that Normandin's question about the lockbox was "a designed, deliberate, intentional, or calculated circumvention of *Miranda*," *United States v. Black Bear*, 422 F.3d 658, 664 (8th Cir. 2005), and there is no significant evidence that the officer deployed such a strategy. So Morgan's warned statements are admissible if his waiver of rights was voluntary, knowing, and intelligent. *Elstad*, 470 U.S. at 318.

After the officers read Morgan his *Miranda* rights, Morgan volunteered that he was a drug dealer from Fremont who sold drugs in Omaha. Normandin then asked Morgan what was the white powdery substance in the lockbox, and Morgan replied

that it was cocaine. "[T]here is no contention that [Morgan] did not understand his rights; and from this it follows that he knew what he gave up when he spoke." *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2262 (2010). No evidence suggests that these postwarning statements were coerced, compelled, or otherwise involuntary. We therefore conclude that Morgan's postwarning statements are admissible.

\*     \*     \*


For these reasons, the order of the district court suppressing physical evidence and statements is reversed, except with respect to the statement that Morgan made before the administration of *Miranda* warnings. The case is remanded for further proceedings.

———————————————