# IN THE COURT OF APPEALS OF IOWA

No. 13-1605
Filed January 14, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LONNIE ALLEN HILL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, James A. McGlynn (motion) and Timothy J. Finn (trial), Judges.


        Defendant appeals the denial of his motion to suppress and subsequent conviction for possession of a controlled substance with intent to deliver. **AFFIRMED.**


        Bruce H. Stoltze Jr. of Stoltze & Updegraff, P.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Mary Triick, Assistant Attorney General, Jennifer Miller, County Attorney, and Benjamin Stansberry, Assistant County Attorney, for appellee.


        Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Lonnie Hill appeals the denial of his motion to suppress evidence and his convictions for possession with intent to deliver, in violation of Iowa Code sections 124.401(1)(B)(7), 124.401E, 124.411, 124.413 (2013), and failure to affix Iowa drug tax stamp, in violation of Iowa Code sections 453B.1, 453B.3, and 453B.12. We affirm the judgment of the district court and preserve certain claims for postconviction-relief proceedings pursuant to Iowa Code chapter 822.

I.

On May 31, 2013, Marshalltown police were dispatched to room 115 of the Executive Inn upon a report of a disturbance involving screaming and hitting the room wall. The hotel desk clerk informed the responding officers that Deana Keahey was the only registered guest but that Keahey had been accompanied by a male, later identified as Lonnie Hill, at check in. The officers approached the room and heard Keahey and Hill engaged in an argument. Keahey yelled, swore, and stated: "I dare you," "f*cking do it," and "shoot yourself in the foot." Upon hearing the word "shoot" during an apparent domestic dispute, the officers became concerned Hill was in possession of a gun and took action accordingly. Rather than immediately knocking on the door, some of the responding officers remained positioned outside the hotel room while another responding officer attempted to contact Keahey by calling the room from the front desk. Hill answered the phone. He first denied Keahey was in the room. He then denied there was any woman in the room and hung up the phone. Before an officer established contact with Keahey or Hill, Keahey opened the door to room 115

and exited.  When the door opened, officers immediately came around the corner with guns drawn on Hill, who was standing in or near the doorway.  The officers ordered Hill to drop his backpack and get on the ground.  The officers then handcuffed Hill and sat him on the bed in the hotel room.

Upon questioning, Keahey and Hill denied there was a gun in the room. They both told the officers Keahey said "shoot yourself in the foot" as a figure of speech.  The officers then asked Hill if they could search the room to confirm there was no gun, to which Hill replied, "sure, you can look around the room." While searching the room, one officer noticed Hill's backpack was heavy. According to the officer's testimony at the suppression hearing, she asked Hill what was in the backpack.  When Hill gave an answer inconsistent with the bag's weight, the officer asked for Hill's consent to search the backpack for guns.  Hill consented.  The officer did not find a gun in the backpack; however, she did find small Ziploc baggies, two pill bottles with Hill's name on them, a miniature Tupperware dish with residue consistent with methamphetamine, and a methamphetamine pipe wrapped in a paper towel.  Hill was arrested and taken into custody.  An inventory search of the backpack uncovered a scale and two baggies containing nearly seventy-five grams of methamphetamine.

Hill was charged with possession with intent to deliver and failure to affix Iowa drug tax stamp, in violation of the code provisions previously cited. Following a jury trial, Hill was found guilty of and convicted of both charges.

4

II.

Hill contends the district court erred in denying his motion to suppress because the search and seizure in this case violated Hill's rights under the federal and state constitutions. We review the constitutionality of a search de novo. *See State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012). "This review requires us to make an independent evaluation of the totality of the circumstances as shown by the entire record, including the evidence presented at the suppression hearings." *Id.* "Because of the district court's opportunity to evaluate the credibility of witnesses, we will give deference to the factual findings of the district court, but we are not bound by them." *Id.*

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 660 (1961); *Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949). The text of Article I, section 8, of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. However, due to the operation of the Supremacy Clause, "the Supreme Court's jurisprudence regarding the freedom from unreasonable searches and seizures under the Fourth Amendment" is a floor and not a ceiling. *State v. Baldon*, 829 N.W.2d 785, 791 (Iowa 2013). Thus, "while United States Supreme Court cases are entitled to respectful consideration, we will engage in

independent analysis of the content of our state search and seizure provisions." *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010).

*Terry v. Ohio*, 392 U.S. 1, 30 (1968), authorizes an officer to conduct an investigatory stop when the officer has a "reasonable suspicion" criminal activity is afoot. *Terry* also authorizes an officer to conduct a reasonable search "for weapons for the protection of the police officer" when the officer has reason to believe the person is armed and dangerous. *Id.* at 27. The ultimate question is "whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *Id.* In answering this, weight must be given to "the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his [or her] experience." *Id.* "If the protective search goes beyond what is necessary to determine if the suspect is armed, the search is no longer valid under *Terry* and its fruits must be suppressed." *State v. Carey*, No. 12-0230, 2014 WL 3928873, at *5 (Iowa Ct. App. Aug. 13, 2014). Hill challenges only the narrow issue of whether the officers had reason to believe he was armed and dangerous to initiate a search. Hill does not challenge the scope of the search.

On de novo review, we agree with the district court that the State established the officers had reason to believe their safety was in danger. The officers were responding to a domestic disturbance at a hotel in the middle of the night. *See State v. Webster*, No. 08-1439, 2010 WL 200292, at *2 (Iowa Ct. App. Jan. 22, 2010) (finding reasonable belief for officer to search and noting "the suspected nature of the crime, domestic assault, heightened the level of

danger"). The officers heard screaming and cussing through the door. The officers testified they believed there was a weapon after hearing the word "shoot." While the officers conceded that Keahey and Hill told them the word was used as a turn of phrase, at the time of the incident the officers certainly were entitled to conduct further inquiry for their own safety and the safety of Keahey. *See State v. Dewitt*, 811 N.W.2d 460, 473 (Iowa 2012), amended on denial of reh'g (Apr. 6, 2012) (stating courts should take care not to engage in unrealistic second guessing of officer conduct in swiftly developing situations). This is particularly true when the officers knew Hill already had made misrepresentations to them inconsistent with their personal observations— specifically, Hill misrepresented whether Keahey or any woman was in the room with him. *See State v. Vanderweide,* No. 12-1419, 2013 WL 4504902, at *3 (Iowa Ct. App. Aug. 21, 2013) (explaining that defendant's misrepresentations inconsistent with officer observation supported search); *State v. Finch*, No. 02-1148, 2003 WL 22828750, at *6-7 (Iowa Ct. App. Nov. 26, 2003) (finding officer was justified in conducting search where defendant made misrepresentations to officer and officer thus did not find reliable defendant's statement that he did not have any additional weapons on his person); *State v. Bergmann*, 633 N.W.2d 328, 333 (Iowa 2001) (noting that evasiveness or lying is a factor supporting reasonable suspicion). Hill also made misrepresentations to the officers regarding the backpack. He told officers he had clothes in the bag, but the weight of the bag and the distribution of the weight in the bag was not consistent with Hill's explanation.

In total, the officers acted reasonably under the circumstances during a fast-developing situation. Accordingly, the search was lawful under the federal and state constitutions, and suppression of the evidence discovered during the search was not required. *See State v. Parish*, No. 02-0279, 2003 WL 21070979, at *2 (Iowa Ct. App. May 14, 2003) (holding search of bag during investigatory detention was not in violation of defendant's Fourth Amendment rights where bag was removed from the defendant's person and citing cases for the same); *see also United States v. Morgan*, 729 F.3d 1086, 1089-90 (8th Cir. 2013) ("Once reasonable suspicion is established, . . . officers may conduct a protective search [regardless of detention] because if the suspect is not placed under arrest, he will . . . then have access to any weapons.").

We also conclude Hill gave consent to the search of the room and the backpack. Consent may be express or implied. We may find consent was given through verbal means, or given by gestures and non-verbal conduct. "A warrantless search conducted by free and voluntary consent does not violate the Fourth Amendment." *State v. Reiner*, 628 N.W.2d 460, 465 (Iowa 2001).

Hill is a mature man of sound mind and with previous experience with law enforcement. He was not under the influence of alcohol or other controlled substances at the time of the search. At the suppression hearing, Hill testified as follows:

> Q: So when you said you can look around, you're referring to the room? A: Yes, and that's exactly what I stated. You can search the room all you want. There is [sic] no weapons here.
> A: Check the drawers. Check all the stuff over there. You could check really whatever you want. Search the room. You know, I don't know how to sum it up. Search the room is what I

said. You can look around the room, check the room. There is [sic] no guns in this room.

Officer Vereen testified that Hill also gave consent to search the bag.

Hill argues that any consent he gave was involuntary due to the officers allegedly having weapons "pointed to his head." During oral argument, Hill's counsel took this one step further and argued that officers had their "guns on [Hill] to coerce consent"—that is, for the purpose of coercing consent. This latter point is a serious allegation, and one wholly without record support. The district court made an implicit credibility determination at the suppression hearing, concluding that the officers did not have their weapons pointed at Hill during the investigatory search and that Hill consented to the search of the room and the bag. On our review of the record, we agree. We affirm on this additional, independent ground.

III.

Hill raises two arguments related to jury instructions. First, Hill argues the district court erred in giving jury instruction no. 19 because it was not supported by the evidence. Second, Hill argues the district court should have issued a remedial instruction after the jury heard ultimately disallowed evidence. Neither issue is preserved for our review. With respect to the first issue, while it is correct that counsel objected to the instruction, counsel did not explain the grounds for objecting to the instruction. *See State v. Maghee*, 573 N.W.2d 1, 8 (Iowa 1997) ("A party objecting to the court's instruction must specify the subject and grounds of the objection. A party's objection must be sufficiently specific to alert the district court to the basis for the complaint so that if there is an error the

court can correct it before submitting the case to the jury. A party's general objection to an instruction preserves nothing for review."). With respect to the second issue, Hill does not cite any authority for the proposition the district court had a duty to issue a remedial instruction to the jury under the circumstances. The argument is waived. Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Hill argues counsel was ineffective for not preserving error with respect to these two issues. Although we find little merit in either argument, we preserve those claims for postconviction-relief proceedings for the development of the record.

IV.

For the foregoing reasons, we affirm the district court's denial of Hill's motion to suppress evidence and Hill's convictions.

**AFFIRMED.**