# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2307
_____

United States of America,

*Plaintiff - Appellee*,

v.

Shane LaGrange,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: September 23, 2020
Filed: December 9, 2020
_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.
_____

COLLOTON, Circuit Judge.

After a grand jury charged Shane LaGrange with drug trafficking and firearms offenses, LaGrange moved to suppress statements and evidence seized from his

person and vehicle after his arrest. The district court[1] denied the motion, and LaGrange entered a conditional guilty plea to two charges. The district court sentenced him to 240 months' imprisonment. On appeal, LaGrange challenges the district court's denial of his motion to suppress. We affirm the judgment.

I.

The disputed seizure arose from interaction between LaGrange and Officers Messer and Liddle of the Cedar Rapids Police Department. The incident took place on December 29, 2017, while the officers were on patrol.

Before the officers started their shift, they received an intelligence memorandum from the department. The memorandum bore a subject line that said "Burglary/Wanted Subject/Officer Safety Information." The body of the memorandum included information about several persons, and stated as follows about LaGrange:

> An informant advised DOT Investigator Jason Nusbaum that Shane LaGrange . . . is in possession of a pink Glock with camo grips. The CI stated he saw him in possession of the gun on 12/27/2017. LaGrange has been staying at different hotels on 33rd Ave SW. Use caution if you make contact. . . . LaGrange is a meth user as well.

Messer was familiar with LaGrange based on several encounters during the course of Messer's law enforcement duties.

While patrolling the area described in the memorandum, the officers noticed a white vehicle parked and running in the parking lot of a hotel. Messer observed an

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

occupant staring intently at the officers through the vehicle's side mirror as the officers patrolled the parking lot.

Messer and Liddle left the parking lot but returned fifteen to twenty minutes later. As the officers entered the lot, they saw the same white vehicle driving toward them. The vehicle stopped in the middle of the parking lot when the officers came into view. As the officers drove past the vehicle, the driver attempted to hide his face behind one arm; he turned his head away from the officers and down toward the center console of his vehicle. Messer was able to identify the driver as LaGrange.

LaGrange then accelerated and left the parking lot. The officers turned around and followed him. LaGrange pulled into the parking lot of a nearby restaurant and got out. The officers pulled in behind him and exited their vehicle. The officers called out to LaGrange; he turned toward the officers with one hand near his waistband. Messer told LaGrange to put his hands where the officers could see them; LaGrange complied. The officers then detained LaGrange and placed him in handcuffs.

The officers questioned LaGrange about the status of his driver's license and whether he had any weapons. Liddle frisked LaGrange but did not find any weapons on his person. Messer determined by reviewing data on his phone that there was no outstanding warrant for LaGrange's arrest. But Liddle confirmed through communication with the police dispatcher that LaGrange's driver's license was suspended. At that point, the officers placed LaGrange under arrest for the driving offense. About three minutes had passed since the officers left their vehicle and called out to LaGrange.

The officers searched LaGrange incident to his arrest and discovered methamphetamine on his person. They searched LaGrange's vehicle and found a firearm. LaGrange made incriminating statements when questioned by the officers.

LaGrange moved to suppress the methamphetamine, firearm, and post-arrest statements as the fruits of an unlawful seizure under the Fourth Amendment. He argued that the officers lacked reasonable suspicion to justify the original detention. The district court denied the motion to suppress after concluding that the officers had reasonable suspicion to initiate an investigatory stop. The court determined that Messer had reasonable suspicion to believe that LaGrange was driving with a suspended license, because Messer had encountered LaGrange on other unspecified occasions within the last two years, and found each time that his license was suspended. The court also concluded that Messer reasonably but mistakenly believed, based on the reference to "Wanted Subject" at the top of the intelligence memorandum, that there was an outstanding warrant for LaGrange's arrest.

LaGrange appeals the denial of his motion to suppress. We review the district court's findings of fact for clear error, and we consider *de novo* whether the officers had reasonable suspicion to justify a seizure. *United States v. Morgan*, 729 F.3d 1086, 1089 (8th Cir. 2013).

II.

The government defends the district court's rationale, but argues alternatively that other facts independently provided reasonable suspicion to seize LaGrange in the restaurant parking area. We may affirm the district court's denial of a motion to suppress on any ground supported by the record. *United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004). Because we conclude that the officers had reasonable suspicion to believe that LaGrange unlawfully possessed a firearm, we need not address the grounds relied on by the district court.

A law enforcement officer may detain an individual for investigation when the officer has a reasonable suspicion, supported by articulable facts, that criminal activity is afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). We consider the

-4-

totality of the circumstances in determining whether the facts known to the officer amount to an objective and particularized basis for reasonably suspecting criminal activity. *Id.* at 8. An officer is entitled to draw specific reasonable inferences from the facts in light of his experience. *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

It is a violation of federal law to possess a firearm as a user of a controlled substance. 18 U.S.C. § 922(g)(3). An intelligence memorandum reported that LaGrange, a known methamphetamine user, was in possession of a firearm and staying in hotels on 33rd Avenue SW. The district court found that this information all came from an informant. That finding is supported by an officer's testimony and a reasonable reading of the memorandum. It is not clearly erroneous.

Although the record does not show a proven track record of reliability for this informant, the officers were entitled to give the information greater weight than an anonymous tip, because police could hold the informant accountable for any false information. *See United States v. Kent*, 531 F.3d 642, 648 (8th Cir. 2008). That the informant's tip was based on direct observation of LaGrange "lends significant support to the tip's reliability." *Navarette v. California*, 572 U.S. 393, 399 (2014). That the tip contained a detailed description of a weapon allegedly in LaGrange's possession—that is, a pink Glock with camo grips—likewise entitled the tip to greater weight than a generalized assertion. *See Illinois v. Gates*, 462 U.S. 213, 234 (1983).

The officers were able to corroborate elements of the informant's tip. Messer knew from experience that LaGrange was a methamphetamine user. The officers located LaGrange in the parking lot of a hotel in the area where the informant said that LaGrange had been staying. An informant who has told "the truth about some things is more likely to tell the truth about other things." *Navarette*, 572 U.S. at 398. The informant's tip was two days old, but LaGrange's presence at the location specified by the informant reasonably suggested that the information was still current. The officers were justified in relying on the informant's tip.

LaGrange's furtive behavior in the parking lots further supported reasonable suspicion of criminal activity. When the officers reentered the hotel parking lot, LaGrange stopped his vehicle in the middle of the lot. As the officers drove past LaGrange, he accelerated out of the parking lot. Officers properly may rely in part on "unusual, but not illegal, driving behavior in determining that an investigatory stop [is] warranted." *United States v. Walker*, 555 F.3d 716, 720 (8th Cir. 2009). LaGrange also attempted to conceal his identity from the officers by covering his face with his arm and looking down toward the center console of his vehicle. *See Morgan*, 729 F.3d at 1090. That LaGrange's hand was near his waistband when he exited his vehicle gave the officers additional reason to stop and frisk LaGrange in light of the informant's report that LaGrange possessed a firearm. *See id.*

For these reasons, we conclude that the officers had reasonable suspicion that LaGrange was engaged in criminal activity—that is, unlawful possession of a firearm—that justified an investigative seizure. LaGrange does not dispute that if the initial seizure was justified, then police developed probable cause during the lawful stop to arrest LaGrange for driving under suspension. Nor does he challenge the conclusion that officers lawfully seized evidence from his person and vehicle after a proper arrest, or that they properly elicited incriminating statements from him. Accordingly, the judgment of the district court is affirmed.

_____