# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1580
_____

United States of America

*Plaintiff - Appellee*

v.

Junian M. Johnson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: February 13, 2025
Filed: July 10, 2025
[Unpublished]
_____

Before COLLOTON, Chief Judge, BENTON and STRAS, Circuit Judges.
_____

PER CURIAM.

After officers found fentanyl pills and a gun in Junian Johnson's vehicle during an investigatory stop, he conditionally pleaded guilty to illegally possessing a firearm. *See* 18 U.S.C. § 922(g)(1). Although he argues the stop violated his Fourth Amendment rights, we affirm.

I.

A 911 caller reported someone firing a gun from a black Chevrolet Tahoe. She remembered all but one digit of the license-plate number, which led officers to Johnson. When they arrived at his house, he was parking a vehicle matching that description in a shared driveway.

Officers tried speaking with him, but he did not respond or otherwise acknowledge them, despite being only "10 to 12 feet away." Instead, he made "furtive gestures" with his arms and hands behind the driver's seat before locking and shutting the car door with his keys inside. At that point, the officers decided to stop, handcuff, and frisk him.

About seven minutes later, one of the officers walked around the vehicle, peered in the windows, and spotted a handgun magazine beneath the passenger seat. The discovery led to a search warrant, which in turn allowed the officers to find the fentanyl pills and gun after towing the vehicle to an impound lot.

Johnson moved to suppress the evidence found in the Tahoe. After the district court[1] denied the motion, Johnson pleaded guilty but reserved the right to challenge the officers' actions on appeal. The Fourth Amendment issues he raises are subject to a mixed standard of review: clear error for factual findings and de novo for legal conclusions. *See United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020).

II.

The alleged problems began with the stop itself, which Johnson thinks lacked justification. *See United States v. Hughes*, 517 F.3d 1013, 1016–17 (8th Cir. 2008). He downplays, however, what the officers knew. By the time they arrived, they

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska, adopting the findings and recommendation of the Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

were aware that a 911 caller had reported that a black Tahoe with closely matching license plates had been involved in a shooting. The caller provided her first name, her phone number, and a detailed report about what happened, all "indicia of reliability." *Navarette v. California*, 572 U.S. 393, 397–400 (2014). The tip went a long way toward establishing reasonable suspicion. *See id.* at 397.

Johnson's actions only heightened their suspicions. He made "furtive gestures" and locked his keys inside the vehicle. *See United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013) (explaining that "furtive gestures" inside a vehicle supported the existence of reasonable suspicion). Along with the shots-fired report, his unusual behavior reasonably led the officers to conclude that he might be armed and dangerous.[2] *See United States v. Quinn*, 812 F.3d 694, 700 (8th Cir. 2016) (concluding that an officer had reasonable suspicion to stop someone who matched the description of a man with a gun and was acting suspiciously). This potential threat to their "personal safety" also gave them a basis to handcuff and frisk him.[3] *Morgan*, 729 F.3d at 1091 (acknowledging that "officers reasonably may handcuff a suspect during the course of a *Terry* stop to protect their personal safety"); *see United States v. Slater*, 979 F.3d 626, 629 (8th Cir. 2020) (holding that they may frisk an individual based on a "reasonable suspicion" that he "might be armed and presently dangerous" (citation omitted)).

---

[2]It is true that nearby officers did not hear gunshots and that the ShotSpotter system did not register any. Here, however, the officers still had reasonable suspicion because "other factors corroborat[ed] the tip" even accounting for the "discrepancies." *United States v. Mosley*, 878 F.3d 246, 254 (8th Cir. 2017); *see United States v. Hightower*, 716 F.3d 1117, 1121 (8th Cir. 2013) (rejecting "a fragmented approach to reasonable suspicion").

[3]The officers "diligently pursued" the investigation, even if the stop lasted seven minutes. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Among other things, they frisked him, asked questions, and looked through the windows of the Tahoe.

Finally, the officers were legally in a spot where they could view the magazine beneath the passenger seat.  We have held that "no Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways."  *United States v. Reed*, 733 F.2d 492, 501 (8th Cir. 1984).  At the time, they were in a shared driveway used by visitors to Johnson's home.  It did not violate the Fourth Amendment for the officers to be there too.  *See id.*; *see also United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) ("[A] person who parks a car—which necessarily has transparent windows—on private property does not have a reasonable expectation of privacy in the visible interior of his car.").

III.

We accordingly affirm the judgment of the district court.

_____